[No. 7216–5–II. Division Two. November 4, 1985.]

DELMAR D. GROVES, *Respondent,* v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant.*

*Kenneth O. Eikenberry, Attorney General,* and *Christine L. Currie, Assistant,* for appellant.

*George L. Wood, Jr.,* and *Platt, Irwin, Colley, Oliver, Miller & Wood,* for respondent.

WORSWICK, C.J.—Delmar Groves lived for 2 years with Nancy Rener and her two minor children. On June 5, 1982, the couple married. Soon thereafter, Rener decided to break off the marriage; she separated from Groves on July 1. Groves and Rener filed for divorce on July 20; the divorce became final on October 22, 1982.

In August 1982, Rener began to receive public assistance. As a condition precedent to receiving aid, Rener assigned to the Department of Social and Health Services her right to child support. Meanwhile, her children's natural father sent $20 a week in child support as required by a New Hampshire court's decree.

DSHS sought reimbursement from Groves for the money it spent to support Rener's children from August 3 to October 22, 1982. Groves refused to pay and requested an

administrative hearing. The administrative law judge held for Groves, concluding that his marriage to Rener was too brief to give rise to a support obligation. A DSHS review examiner reversed, holding that Groves was obligated to support Rener's children until the marriage was legally dissolved. Groves appealed to the Clallam County Superior Court, which reinstated the administrative law judge's ruling. DSHS appeals; we reverse, holding that Groves is obligated to support his stepchildren for the period of the marriage.

 This case is before us for review of an administrative agency order pursuant to RCW 34.04.130(6). We therefore review the record of the agency, not that of the superior court. *Franklin Cy. Sheriff's Office v. Sellers,* 97 Wn.2d 317, 646 P.2d 113 (1982), *cert. denied,* 459 U.S. 1106 (1983).

Groves' support obligation derives from RCW 26.16.205, which provides:

> *The expenses of the family* and the education of the children, *including stepchildren,* are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately: *Provided,* That with regard to stepchildren, the obligation shall cease upon the termination of the relationship of husband and wife.

(Italics ours.)

 We interpret RCW 26.16.205 as requiring a stepparent to support his or her stepchildren once a family unit has been established. Groves, Rener and Rener's children lived together as a family unit in fact for at least 2 years. When Groves and Rener married, a family unit was constituted by law as well. Groves thereupon became obligated to support his stepchildren. That obligation continued until the marriage was legally dissolved. *Cf. State v. Gillaspie,* 8 Wn. App. 560, 507 P.2d 1223 (1973).

Groves argues that he has no duty to support Rener's children because he was never a custodial stepparent.

Citing *Van Dyke v. Thompson,* 95 Wn.2d 726, 630 P.2d 420 (1981), Groves appears to define "custodial stepparent" as one who lives with his or her spouse's children and consciously assumes a duty to support them.

*Van Dyke* does not apply. In that case, the court held that a noncustodial stepparent had no obligation to support her stepchild because she never lived in a family unit with the child. By contrast, Groves lived with Rener's children both before and after the marriage. When he married Rener, he consciously obligated himself to support them. Under his own definition, Groves is a custodial stepparent.

Groves also contends that RCW 26.16.205 does not apply to him because he lived with the children for only a brief period after the marriage. He tries to persuade us that the years in which he lived with Rener and the children are of no significance because a meretricious relationship cannot give rise to a duty to support. We are not persuaded. In those years, he created a family unit. When he married Rener, he brought together both elements envisioned by the Legislature: a family unit, and a legal relationship with Rener's children.

Finally, Groves also argues that he should not be held liable for child support because the children's natural father is paying support pursuant to a court decree. We disagree. Rener's former husband paid only $20 a week in child support. The record shows that the State paid far more to support her children. Liability for child support is joint and several between natural parents and stepparents. *See, e.g., State v. Finister,* 5 Wn. App. 44, 486 P.2d 114 (1971). Therefore, DSHS may seek reimbursement from Groves. We need not consider whether Groves is entitled to an offset for the money Rener actually received from her former husband, for Groves has not raised or argued the issue.

Judgment reversed.

REED and PETRICH, JJ., concur.