[No. 10784-8-II. Division Two. July 20, 1988.]

*In the Matter of the Marriage of* KATHRYN NIELSEN, *Appellant, and* JAMES P. NIELSEN, *Respondent.*

*Cameron R. Little,* for appellant.

*John R. Stichman,* for respondent.

REED, C.J.—Kathryn Nielsen appeals a determination that James Nielsen had no duty to pay postmajority child support for their daughter Charlene. We reverse.

The Nielsens were divorced in August 1981. The dissolution decree ordered James to pay to Kathryn monthly child support for their three children "to continue until the dependent children of these parties is emancipated and no longer dependent upon the parties hereto under the laws of the state of Washington." In June 1984, the parties stipulated to an increase in the child support payments, with the provision that Kathryn was not to request another increase for 2 years.

In January 1986, when the Nielsens' daughter Charlene reached age 18, James began sending support checks directly to her. Kathryn objected to this practice and returned the April check to be reissued to her.[1] James then ceased making payments, and in July 1986 Kathryn filed a petition to modify the decree, requesting, in part, payment of support arrearages and continued support while Charlene attended school. Kathryn alleged that Charlene remained dependent. James responded that his support obligation ended when Charlene reached age 18, that his

---

[1]During oral argument, Kathryn's attorney indicated that all checks mailed to Charlene were returned to James. However, Kathryn's affidavit in the record states only that the April check was returned.

support obligation could not be modified after it so ended, and that no substantial change in circumstances justified modification. The Court Commissioner dismissed this portion of Kathryn's motion, finding that James had no obligation to support Charlene beyond age 18, under either the dissolution decree or the subsequent order of modification. The Superior Court denied Kathryn's motion to revise the Commissioner's order, and Kathryn appeals.

Before this court, Kathryn alleges only that the language of the original dissolution decree required James to pay postmajority support for Charlene.[2] Construction of a dissolution decree's language is a question of law that this court may decide, and we will attempt to discern the intended effect of the decree by applying the rules of construction for statutes, contracts, and other writings. *In re Marriage of Gimlett,* 95 Wn.2d 699, 704–05, 629 P.2d 450 (1981). Contracts are construed to give a reasonable, fair, just, and effective meaning to all manifestations of intent, *PUD 1 v. WPPSS,* 104 Wn.2d 353, 373, 705 P.2d 1195, 713 P.2d 1109 (1985), and statutes generally are construed so that no provision is rendered superfluous. *Gimlett,* 95 Wn.2d at 703.

The language of this decree must be considered in light of former RCW 26.09.100 and .170, which were in effect and had been interpreted in two Supreme Court decisions when this decree was entered. Former RCW 26.09.100 permits a court in a dissolution proceeding to "order either or both parents owing a duty of support to any child of the marriage dependent upon either or both spouses to pay an amount reasonable or necessary for his support." Under RCW 26.09.170(3), "[u]nless otherwise agreed in writing or expressly provided in the decree, provisions for the support

---

[2]Because Kathryn bases her claim for support solely upon the language in the original decree, so that we must determine only whether this document requires postmajority support, we need not consider James's contention that Kathryn could not seek such support under a petition to modify filed after Charlene reached the age of majority.

of a child are terminated by emancipation of the child or by the death of the parent obligated to support the child."

In *Childers v. Childers,* 89 Wn.2d 592, 596–97, 575 P.2d 201 (1978), the court held that these statutes permit a court to order support for children past age 18, because the support obligation is based on dependency, not upon minority, and the support obligation terminates at emancipation, not majority. The court treated emancipation, majority, and dependency as distinct concepts, and defined a dependent as "one who looks to another for support and maintenance, one who is in fact dependent, one who relies on another for the reasonable necessities of life." *Childers,* 89 Wn.2d at 598. In contrast, "emancipation," as used in the statute, occurs when the child reaches the age of majority or is emancipated in fact (has terminated economic dependency), whichever occurs first. *Gimlett,* 95 Wn.2d at 704. Thus, a parent's duty to support children will terminate when the child is no longer economically dependent or reaches age 18, whichever occurs first, unless the court expressly orders support beyond the age of majority, either in the original decree or by modification. *Gimlett,* 95 Wn.2d at 703–04. Where the decree merely ordered support until the children were emancipated, it did not express the intention that support was to continue beyond majority.

More recently, we held that a decree that ordered support to continue until the children were no longer dependent, were emancipated, *or* until further court order, also failed to provide expressly for postmajority support. Because that decree set forth in the disjunctive three events as conditions for termination of support, the support could be terminated when one of these conditions, emancipation, was met. *In re Marriage of Main,* 38 Wn. App. 351, 352, 684 P.2d 1381 (1984). However, a decree ordering support *so long as* the children remained dependent was sufficiently express and specific "to evidence an intention that an event other than emancipation would terminate" support, and to

require postmajority support if a court found that the children were dependent. *In re Marriage of Anderson,* 49 Wn. App. 867, 872, 746 P.2d 1220 (1987).

■ The language of the Nielsen decree, requiring support until the children were "emancipated and no longer dependent" is also sufficiently explicit to order postmajority child support. The decree was entered when the trial court had clear authority to order such support and, in the conjunctive, it used terms that had been held to have distinct meanings. James was to pay support until both conditions were met: Charlene's emancipation, *i.e.,* reaching majority or earlier economic independence; and the end of her dependency, *i.e.,* the end of her reliance on her parents for support and maintenance or the reasonable necessities of life.

This interpretation finds support in the plain language and circumstances of the decree, and avoids rendering superfluous the phrase "and no longer dependent". James's conduct itself lends support to this interpretation, because he continued to make payments after Charlene's birthday, albeit directly to Charlene. Finally, such an interpretation seems particularly reasonable in light of the above cited recent decisions interpreting other decrees. Accordingly, we hold that James's support obligation did not terminate automatically when Charlene reached the age of majority, but ended only upon the end of her dependency. We reverse and remand for a determination as to when dependency ended.

PETRICH and ALEXANDER, JJ., concur.

Review denied by Supreme Court November 1, 1988.