[No. 35845-6-I.   Division I.   September 16, 1996.]

EDWARD HARMON, *Appellant*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

J. *Richard Quirk*, for appellant.

*Christine O. Gregoire, Attorney General*, and *M. Scott Majors, Assistant*, for respondent.

BECKER, J. — Appellant Harmon's minor stepchildren voluntarily left his home. Under the common law, that event would end his duty to support them. But under the family support statute, a stepparent's duty of support continues until dissolution of the marriage, legal separation, or death. Because the statute has clearly and unambiguously changed the common law as to the events that will terminate a stepparent's obligation, we affirm an order requiring Harmon to pay child support.

Edward Harmon's wife, Darlene, divorced Tom Dooley in 1984. She was awarded custody of their two daughters, who were six and seven at the time. Darlene married Edward Harmon in 1985. The Harmons and the girls lived together as a family for the next seven years. The girls moved out of the Harmon home in 1992 and moved in with Tom Dooley and his new wife, Linda. Later that same year, the court granted custody of the girls to Tom Dooley, their natural father. The custody order did not set child support.

After he was awarded custody, Dooley asked the Depart-

ment of Social and Health Services to establish a child support obligation for the Harmons. The Department served Edward Harmon with a notice and finding of financial responsibility pursuant to RCW 74.20A.055. Harmon objected to the notice and requested a hearing before an Administrative Law Judge. The ALJ ruled that Harmon's support obligation ended when the girls left his home. The Department petitioned for administrative review. The Review Judge reversed the ALJ, concluding that Harmon remained obligated to contribute to his stepchildren's support under RCW 26.16.205. Harmon petitioned the superior court for judicial review. The superior court upheld the Review Judge's decision and dismissed Harmon's petition. He appeals.

The statutory support duty of stepparents arose when, in 1969, the Legislature added the words "including stepchildren" to the family support statute, RCW 26.16.205.[1] On its face, this statute requires stepparents to contribute to their stepchildren's support until divorce, legal separation, or death:

> The expenses of the family and the education of the children, including stepchildren, are chargeable upon the property of both husband and wife, or either of them, and they may be sued jointly or separately. When a petition for dissolution of marriage or a petition for legal separation is filed, the court may, upon motion of the stepparent, terminate the obligation to support the stepchildren. The obligation to support stepchildren shall cease upon the entry of a decree of dissolution, decree of legal separation, or death.[2]

Notwithstanding the statute's plain language, a 1992 decision of this court, *In re Marriage of Farrell*,[3] holds that a stepparent's support obligation may be terminated by an event not specifically included in the statute; i.e., the voluntary departure of the stepchild from the stepparent's

---

[1]LAWS OF 1969, 1st Ex. Sess., ch. 207, § 1, at 1549.

[2]RCW 26.16.205.

[3]*In re Marriage of Farrell*, 67 Wn. App. 361, 835 P.2d 267 (1992).

home. *Farrell*'s facts are virtually identical to those in this case. Anthony and Irene Farrell divorced in 1977. The trial court granted Irene custody of their two daughters, Joeal and Michelle, and ordered Anthony to pay monthly child support until the girls reached majority or were emancipated. In 1980 Irene married Edward Spencer. Both girls lived with the Spencers. In 1989 Michelle, by then a teenager, left home. She moved in with the Brewers, a couple she was acquainted with but not related to. The Brewers eventually petitioned for and were granted custody of Michelle. The court ordered Michelle's stepfather, Edward Spencer, as well as both of her biological parents, to contribute to her support. The Spencers appealed, claiming that Edward Spencer's obligation to support Michelle ended once she no longer lived with him.[4]

The *Farrell* court first considered the common-law rule. Under the common law, a stepparent becomes obligated by establishing an in loco parentis relationship with the child. The support obligation thus assumed is temporary, lasting only so long as the in loco parentis relationship continues.[5] Either the child or the stepparent may decide to sever the relationship.[6] Under the common-law rule, Michelle terminated her in loco parentis relationship with Edward Spencer when she left his home, and by so doing she terminated his common-law duty of support, too.[7]

The *Farrell* court next considered whether the statute had displaced the common law, and concluded that it had not. Accordingly, the court ruled that Edward Spencer, though still married to Michelle's mother, no longer had a duty to support Michelle. In determining that the common law remained in effect, the court relied on the

[4]*Farrell*, 67 Wn. App. at 363-64.

[5]*Taylor v. Taylor*, 58 Wn. 2d 510, 512, 364 P.2d 444 (1961).

[6]*Taylor*, 58 Wn.2d at 512-513.

[7]*Farrell*, 67 Wn. App. at 365-66.

Supreme Court's earlier decision in *Van Dyke v. Thompson*.[8]

Pivotal in *Van Dyke* was the rule that the Legislature must choose clear and unambiguous language in order to depart from the common law. In that case, the Department of Social and Health Services argued that, under the statute as amended, a stepparent who had never resided with his spouse's children had become liable for their support. In order to become obligated for support under the common law, a stepparent must intentionally and factually assume the role of parent.[9] The construction proposed by the Department in *Van Dyke* was thus at odds with the common law. The statute does not, in clear and unambiguous language, set forth a new rule redefining how the duty of support arises. Accordingly, the *Van Dyke* court did not construe the statute as providing that a person will become obligated merely by marrying the child's natural parent. The court could not find that the Legislature intended to impose a support obligation upon a person who had never assumed a parental role.

But the statute does, in clear and unambiguous language, redefine the events that terminate the duty of support once it has arisen: "entry of a decree of dissolution, decree of legal separation, or death."[10] This is the point where we must respectfully disagree with the *Farrell* court's decision to give continuing effect to the common-law rule that ends the stepparent's duty of support when the child leaves home. In distinct contrast to the common law, the statute does not permit either the child or the stepparent to bring about an informal termination of the duty of support by abandoning the family relationship.

*Farrell* reasons that RCW 26.16.205 "does not evidence an intent to change the common law with respect to the

---

[8]*Van Dyke v. Thompson*, 95 Wn.2d 726, 630 P.2d 420 (1981).

[9]*Taylor*, 58 Wn.2d at 512-513.

[10]RCW 26.16.205.

child's ability to end an in loco parentis relationship" because it does not "address" what happens when a stepchild leaves the stepparent's home.[11] But the Legislature is not required to "address" every conceivable situation in order to show its intent to depart from the common law. To satisfy *Farrell*'s implicit test for evidence of legislative intent, the Legislature would have to itemize all the common-law events—including the voluntary departure of either the stepparent or the stepchild—that *will not* terminate the statutory obligation. That method of drafting a statute is cumbersome. It is not our province to prescribe it.

It is enough that the statute forthrightly and affirmatively lists the events that *will* terminate the obligation.[12] The absence of any mention of a situation where the stepchild leaves home indicates that the statute does not attribute significance to the location or conduct of the stepchild. The applicable principle of statutory construction is the maxim expressio unius est exclusio alterius— the expression of one thing is the exclusion of another.[13] Under the statute's bright-line rule, fixed and formal events now measure the extent of a stepparent's support obligation. Excluded by the statute is the common law's more flexible (and therefore more time-consuming) inquiry whether the "somewhat nebulous"[14] in loco parentis relationship has been informally severed by either the stepchild or the stepparent.

We confronted a similar issue in *State v. Gillaspie*.[15] The criminal nonsupport statute at issue there, former RCW 26.20.030, is closely related to the stepparent amendment to the family support statute. Both were adopted as part

---

[11]*Farrell*, 67 Wn. App. at 366.

[12]*See In re McLaughlin's Estate*, 4 Wash. 570, 591-92, 30 P. 651 (1892) (the marriage statute renders a common-law marriage invalid, even though the statute does not expressly so provide).

[13]*Snohomish County v. Anderson*, 123 Wn.2d 151, 157, 868 P.2d 116 (1994).

[14]*Taylor*, 58 Wn.2d at 512.

[15]*State v. Gillaspie*, 8 Wn. App. 560, 507 P.2d 1223 (1973).

of the same enactment, which used basically the same wording for both sections: "That with regard to stepchildren the obligation shall cease upon termination of the relationship of husband and wife."[16] In *Gillaspie* the "precise problem" was determining "at what point the legislature intended that the support obligation of the stepparent should be cut off."[17] We recognized that under the common law, the obligation of a custodial stepparent ceases with the severance of the in loco parentis relationship.[18] We nevertheless held that a stepparent separated from the family continued to owe support because the statutorily required event— termination of the marriage—had not yet occurred.[19]

The statutorily required event has not occurred in the Harmon household, either. And it had not occurred in two cases that followed *Gillaspie*: *Groves v. Department of Soc. & Health Servs.*[20] and *Stahl v. Department of Soc. & Health Servs.*[21] If dissatisfied with these judicial precedents, the Legislature could have rejected them and returned to the common-law basis for terminating the stepparent support obligation. Instead, in 1990, the Legislature amended RCW 26.16.205 to its present form, setting forth with even greater specificity the conditions that will terminate the stepparent support obligation.[22]

*Farrell* cannot be reconciled with *Gillaspie*, *Groves*, and *Stahl* on this point because there is no reason to distinguish between a stepchild's departure and a stepparent's

---

[16]LAWS 1969, 1st Ex. Sess., ch. 207, §§ 1-2, at 1549.

[17]*Gillaspie*, 8 Wn. App. at 562.

[18]*Gillaspie*, 8 Wn. App. at 562 (citing *Taylor*).

[19]*Gillaspie*, 8 Wn. App. at 562-63.

[20]*Groves v. Department of Soc. & Health Servs.*, 42 Wn. App. 84, 709 P.2d 1213 (1985).

[21]*Stahl v. Department of Soc. & Health Servs.*, 43 Wn. App. 401, 717 P.2d 320, *review denied*, 106 Wn.2d 1009 (1986).

[22]LAWS 1990, 1st Ex. Sess., ch. 2, § 13.

departure in determining whether the stepparent remains obligated to contribute to the child's support. That distinction originates solely in *Farrell,* not in the statute.

Harmon urges that, as a matter of policy, requiring him to pay continued support is a result lacking in common sense and fairness. His wife's minor children have ceased to be functional members of the Harmon family, and he expresses the concern that the only way he can avoid having to support them is by legally ending his happy marriage. But, as usual with matters of public policy, there is more than one concern to consider. The Legislature may well have found it sensible to maintain an existing source of financial support for children whose original family unit is no longer intact. The Legislature may have deemed it fair to hold stepparents to a responsibility that they voluntarily undertook along with the privilege and benefits of marriage. The Legislature may also have preferred a bright-line rule for its ease in administration and adjudication of child support obligations. The Legislature may have decided that compared to these benefits, the risk of sham divorces is slight.

Respect for the Legislature's powers requires that we read the statute to ascertain legislative intent rather than trying to decide what public policy should prevail. Legislative intent to abrogate the common-law rule is evident from the plain language of RCW 26.16.205. A stepparent who has incurred a duty of support can be relieved of it only as the statute provides.

In a related statute, the Legislature has said the same thing. RCW Chapter 74.20A expresses a legislative intent to see that children are supported by responsible parents.[23] It then defines a stepparent as a responsible parent,[24] and states that the status of stepparent "shall exist until

[23]RCW 74.20A.010.

[24]RCW 74.20A.020(7).

terminated as provided for in RCW 26.16.205."[25] To adopt Harmon's position is to rewrite both statutes.

We conclude that RCW 26.16.205 indeed means custodial stepparents must continue to support their stepchildren until one of the statutory events occurs. If either the stepparent or the child leaves the family home, that alone does not terminate the duty of support. To the extent that *Farrell* holds otherwise, we respectfully decline to follow it.

The decision of the superior court is affirmed.

BAKER, C.J., concurs.


AGID, J. (concurring in the result) — I concur with the conclusion the majority has reached because I think the legislative intent on this issue is entirely unclear. In my view, the Legislature did not even consider this circumstance when it enacted RCW 26.16.205. Thus, the conclusion we reached in *In re Marriage of Farrell*, 67 Wn. App. 361, 835 P.2d 267 (1992), is just as likely to accurately reflect the interplay between the statute and the common law as is the conclusion we reach today.

In an era of frequent divorce and remarriage, the stepparent's obligation to support a spouse's children impacts many Washington parents. I write separately to urge the Legislature to make the policy decision about this important issue that is its right and obligation to make.

Review granted at 131 Wn.2d 1008 (1997).

[25]RCW 74.20A.020(8).