[No. 64800-0. En Banc.]
Argued June 11, 1997. Decided February 26, 1998.
EDWARD HARMON, *Petitioner*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Respondent*.

*J. Richard Quirk*, for petitioner.

*Christine O. Gregoire, Attorney General*, and *M. Scott Majors, Assistant*; and *Davis Wright Tremaine*, by *Gregory J. Kopta*, for respondent.

*David E. Engdahl* and *William C. Oltman*, amici curiae.

GUY, J. — In this appeal we are asked to determine whether the family expense statute, RCW 26.16.205, imposes a child support obligation on a stepparent which is equal to that of the child's mother and father and which continues after the child leaves the family home. We hold RCW 26.16.205 is not a self-contained and autonomous child support statute. It may not be used independent of the standards, guidelines and schedule the Legislature has enacted to govern child support liability and computation in this state. *See* RCW 26.19 (Washington Child Support Schedule).

Prior law enabled the Department of Social and Health Services to look to the stepparent and to rely upon the stepparent's income when determining a child support obligation. *See* former RCW 74.20A.055 (amended by LAWS OF 1991, ch. 367, § 46), RCW 74.20A.020 and RCW 26.16.205. However, with the enactment of this state's child support schedule and standards in 1988, the Legislature made a

policy decision to impose the primary child support obligation on the child's natural parents and therefore provided that the basic child support obligation is to be calculated without reference to a stepparent's income.

Our child support guidelines and standards do not permit an agency or court to substitute a stepparent for a parent when determining the basic child support obligation. In this case, the family expense statute should not have been used to impose a primary financial responsibility on a stepfather for the support of stepchildren who were in the residential care of their father and stepmother. Accordingly, we reverse.

## FACTS

Appellant Edward Harmon married Darlene Dooley in 1985. At that time Darlene was the custodial parent[1] of two daughters, ages eight and nine years old, who were born during her marriage to Tom Dooley.

After living with their mother and stepfather for almost seven years, both children left the Harmon home in February 1992 and moved into the home of their father and stepmother, Tom and Linda Dooley.

On March 31, 1992, the superior court modified custody of the children, ordering the primary residential placement of the children be changed from the mother's home to the father's home. The modification order did not address child support. In April 1992, the children's father requested the Department of Social and Health Services (hereafter Department) to calculate and collect support payments for the children pursuant to RCW 74.20A. The Department initially served only the mother with a "Notice and Finding of Financial Responsibility," and she requested a hearing. The Administrative Law Judge (ALJ) determined the mother was permanently disabled and had no ability to

---

[1]The marriage of Darlene Harmon and her former husband was dissolved in 1984, before the enactment of the Parenting Act of 1987, and when this state still used the terms "custody" and "visitation."

earn income. Based on this state's child support schedule, RCW 26.19.020, the ALJ ordered the mother to pay $25 per child per month.[2]

Shortly after the proceeding against the mother was concluded, the Department served the stepfather, Petitioner Edward Harmon, with a "Notice and Finding of Financial Responsibility."

At an administrative hearing held to contest this finding, the ALJ dismissed the Department's finding of financial responsibility and held the stepfather had no obligation to support his stepchildren once they left his home. However, "to avoid possible remand and rehearing," the ALJ completed the child support schedule worksheets and calculated the amount the stepfather would owe as child support in the event the ALJ's decision were reversed. Using the incomes of Mr. Harmon and Mr. Dooley, the ALJ altered the printed Child Support Schedule Worksheets by changing the designations under Part I (Basic Support Obligation) from "FATHER" and "MOTHER" to "Step-FATHER" and "Nat. FATHER." Clerk's Papers at 49. Then, based on the net incomes of the stepfather and father, the ALJ computed the stepfather's total monthly support obligation (should he be found to be liable on appeal) to be $486.10. The stepfather is disabled and unemployed. His monthly net income of $1,320.20 is received from Department of Labor and Industries and Social Security Administration disability payments.

The Department petitioned for administrative review of the ALJ's ruling that the stepfather was not liable. The Department's Review Judge reversed and held the stepfather was liable for support under RCW 26.16.205 of the community property statute, and that his liability could be terminated, pursuant to that statute, only by legal separation, marriage dissolution, or death. The Review Judge ordered the stepfather to pay support in the amount of $486.10 per month. In addition, the Review Judge deter-

---

[2]The rulings related to the proceeding involving only Mrs. Harmon are not challenged on appeal.

mined the stepfather owed an accrued child support debt of $8,701.19.

The stepfather appealed to the Snohomish County Superior Court, which affirmed the Review Judge's decision.[3] The Court of Appeals affirmed the Superior Court. *Harmon v. Department of Soc. & Health Servs.*, 83 Wn. App. 596, 922 P.2d 201 (1996). In its decision, the Court of Appeals held RCW 26.16.205 is plain and unambiguous and that it requires custodial stepparents to contribute to their stepchildren's support until divorce, legal separation, or death. *Harmon*, 83 Wn. App. at 598. The Court of Appeals rejected a contrary interpretation of the statute set forth in *In re Marriage of Farrell*, 67 Wn. App. 361, 835 P.2d 267 (1992). We accepted review of the case to resolve the conflict between *Farrell* and *Harmon*.[4]

## ISSUE

Does RCW 26.16.205 impose an obligation upon a stepparent which is equal to that of the natural mother and father for the purpose of calculating and paying child support for stepchildren who have moved from the stepparent's home?

## ANALYSIS

■■ Our review in this case is governed by the Administrative Procedure Act, RCW 34.05, which permits reversal if the agency has erroneously interpreted or applied the law. RCW 34.05.570(3)(d); *Tapper v. Employment Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Where, as here, the issue is one of statutory interpretation, our review is de novo. *Clauson v. Department of Labor & Indus.*, 130 Wn.2d 580, 583, 925 P.2d 624 (1996).

---

[3]Petitioner Harmon's request for a stay of collection of support payments pending appeal was apparently denied by the Superior Court. See Pet. for Review at 2, Br. of Appellant at 3.

[4]The father and stepmother intervened in the case on appeal. David E. Engdahl and William C. Oltman, attorneys who are on the faculty at Seattle University School of Law, appeared as amici in this court.

In determining the meaning of a statute, we apply general principles of statutory construction. These principles begin with the premise that if a statute is plain and unambiguous, its meaning must be derived from the language of the statute itself. *State v. Mollichi*, 132 Wn.2d 80, 87, 936 P.2d 408 (1997); *Marquis v. City of Spokane*, 130 Wn.2d 97, 107, 922 P.2d 43 (1996). Ambiguity exists if the language of a statute is susceptible to more than one reasonable interpretation. *Vashon Island Comm. for Self-Gov't v. Washington State Boundary Review Bd.*, 127 Wn.2d 759, 771, 903 P.2d 953 (1995). If a statute is ambiguous, resort to the tools of statutory construction is appropriate. *State v. Bash*, 130 Wn.2d 594, 601-02, 925 P.2d 978 (1996). In such cases, our primary duty is to ascertain and give effect to the intent and purpose of the Legislature. *State v. Hennings*, 129 Wn.2d 512, 522, 919 P.2d 580 (1996). In construing a statute, we may look to the legislative history of the statute as well as to other statutes dealing with the same subject matter in order to discern legislative intent. *Washington Pub. Util. Dists.' Utils. Sys. v. Public Util. Dist. No. 1*, 112 Wn.2d 1, 7, 771 P.2d 701 (1989).

As the concurring opinion in the Court of Appeals decision in *Harmon* points out, the conflicting decisions of the Court of Appeals in *Farrell* and *Harmon* are both reasonable interpretations of the family expense statute. *Harmon*, 83 Wn. App. at 604 (Agid, J., concurring in result). We determine that the statute, RCW 26.16.205, is ambiguous.

A review of the history of RCW 26.16.205 and of related child support and family law developments in Washington further illustrates the ambiguity of this statute and is helpful in ascertaining and understanding legislative intent.

RCW 26.16.205, the statute involved here, is part of our community property law. First enacted in 1881, the original purpose of the law was to make husbands and wives equally responsible for the necessary expenses of their families and the education of their children. *Haddad v. Chapin*, 153 Wash. 163, 164-65, 279 P. 583 (1929). The statute was enacted in derogation of common law, under which a

husband was primarily responsible and a wife only second-arily responsible for the expenses of the family.[5] *See Scott v. Holcomb*, 49 Wn.2d 387, 390, 301 P.2d 1068 (1956) (quoting *Hector v. Hector*, 51 Wash. 434, 439, 99 P. 13 (1909)); *Hughes v. Hughes*, 11 Wn. App. 454, 457-58, 524 P.2d 472 (1974). Under this statute, a mother and a father were equally obligated for the necessary expenses of child rearing, and this obligation survived the termination of the marriage. *Scott*, 49 Wn.2d at 389 (unless otherwise provided in the divorce decree, a mother who has had custody of the children may recover from their father no more than one-half the amount she has expended in maintaining them).

RCW 26.16.205, the family expense statute, remained unchanged for nearly 90 years, until 1969, when, at the request of the Department of Public Assistance,[6] the law was amended as follows:

> The expenses of the family and the education of the children, *including stepchildren,* are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately: *PROVIDED, That with regard to stepchildren, the obligation shall cease upon the termination of the relationship of husband and wife.*

Laws of 1969, 1st Ex. Sess., ch. 207, § 1 (emphasis added). The Department explained to the Legislature that the purpose of the proposed amendment to the community property law was to comply with federal regulations governing allocation of federal public assistance funds to the State. In determining eligibility for public assistance, the Depart-

---

[5]As originally enacted, the statute provided: "The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately." Code of 1881, § 2407. The statute was first codified at Rem. Rev. Stat. § 6906, later was recodified at RCW 26.20.010, and is now contained in RCW 26.16.205. Despite the fact that the community property law was enacted in derogation of common law, the statute was to be "liberally construed with a view to effect its object." Code of 1881, § 2417 (codified at Rem. Rev. Stat. § 6898).

[6]The Department of Public Assistance was abolished and its duties transferred to the newly created Department of Social and Health Services in 1970. Laws of 1970, ch. 18.

ment treated a child who lived with a stepparent and one of his or her parents in the same manner as it treated a child who lived with both natural parents. *See Washington Statewide Org. of Stepparents v. Smith*, 85 Wn.2d 564, 569-70, 536 P.2d 1202, 75 A.L.R.3D 1119 (1975). In order to continue this practice, federal regulations required that all stepparents, not just those on public assistance, be treated the same, under a law of general application.[7] Documentation in the House of Representatives Committee file shows the Department explained to the Legislature that the proposed bill was "strictly a money bill," and that it would not have been proposed if the Department did not believe the bill would save the State approximately $6.5 million in federal aid during the 1969-71 biennium.[8]

RCW 26.16.205 was not amended again until 1990. Between the two amendments, significant legislative changes occurred in the area of family law in Washington, and a number of appellate court decisions interpreted the existing family expense statute.

Legislative changes included the adoption, in 1973, of the Uniform Marriage and Divorce Act. LAWS OF 1973, 1st Ex. Sess., ch. 157 (codified at RCW 26.09). This statute permits dissolution of a marriage without regard to fault of either party. The Uniform Marriage and Divorce Act gave the trial judge discretion to determine the amount of child support, based on a consideration of "all relevant factors." Former RCW 26.09.100.

RCW 74.20A.055 also was enacted in 1973. LAWS OF 1973, 1st Ex. Sess., ch. 183, § 25. This statute authorized the Department of Social and Health Services to determine child support obligations of a "responsible parent" whose

---

[7]Stepparents who assumed the status of "in loco parentis" were liable for the support of stepchildren in their care under the common law. *See, e.g., Van Dyke v. Thompson*, 95 Wn.2d 726, 728-29, 630 P.2d 420 (1981) (citing *Taylor v. Taylor*, 58 Wn.2d 510, 512, 364 P.2d 444 (1961). *See also State ex rel. Gilroy v. Superior Court*, 37 Wn.2d 926, 933, 226 P.2d 882 (1951) (term "in loco parentis" means in the place of a parent, instead of a parent, charged with a parent's rights, duties, and responsibilities).

[8]The legislative file is available at the Washington State Archives.

child was receiving services from the Department. RCW 74.20A was amended in 1979 to include stepparents within the definition of "responsible parent." LAWS OF 1979, 1st Ex. Sess., ch. 171, § 3(5). Before 1988 and the enactment of the Child Support Schedule, RCW 26.19, the Department was authorized, pursuant to former RCW 74.20A.055(6), to base child support orders on the earnings and resources of any "responsible parent."

In 1987, the Parenting Act, LAWS OF 1987, ch. 460 (primarily codified within RCW 26.09), was enacted in an attempt to lessen the conflict between parents whose marriage was being dissolved and to provide guidelines for the continued involvement of parents in their children's lives following the breakup of the family. *See In re Marriage of Kovacs*, 121 Wn.2d 795, 800, 854 P.2d 629 (1993).

Also in 1987, the Legislature established the Washington State Child Support Schedule Commission, which was charged with recommending a statewide child support schedule. LAWS OF 1987, ch. 440.[9] The following year, the Legislature enacted the statewide child support schedule and guidelines recommended by that Commission. LAWS OF 1988, ch. 275. The schedule was revised two years later in an enactment that also amended RCW 26.16.205, the family expense statute. LAWS OF 1990, 1st Ex. Sess., ch. 2.

During this same period of time, from 1969 to 1990, this court and the Court of Appeals interpreted RCW 26.16.205 in light of the common-law doctrine of in loco parentis and in light of various factual settings. Unfortunately, the

---

[9]In 1984, Congress required every state seeking federal funding for its welfare program to have laws establishing advisory child support guidelines. Child Support Enforcement Amendments of 1984, Pub. L. No. 98-378, 98 Stat. 1305 (1984). The Family Support Act of 1988 requires states, as a condition of participating in the federal public welfare program, to establish child support guidelines that operate as rebuttable presumptions of the correct support amount. Any deviation from the presumptive amount must be supported by a decision maker's specific findings, in writing or on the record, as to why the guideline amount would be unjust or inappropriate in a particular case. 42 U.S.C. § 667 (b)(2). *See also* Margaret Campbell Haynes, *Understanding the Guidelines and the Rules*, 16 A.B.A. FAM. ADVOCATE No. 2, at 14 (1993); Helen Donigan, *Calculating and Documenting Child Support Awards Under Washington Law*, 26 GONZ. L. REV. 13 (1990/91).

results of our decisions and those of the Court of Appeals have not produced a consistent rule.

We first reviewed the 1969 amendment to RCW 26.16.205 in *Washington Statewide Org. of Stepparents*, a class action in which this court was asked to hold RCW 26.16.205 unconstitutional. We upheld the constitutionality of the statute but did not determine whether RCW 26.16.205 applied to a stepparent whose stepchild did not reside in the stepparent's home. *Stepparents*, 85 Wn.2d at 565 n.2.

In *Van Dyke v. Thompson*, 95 Wn.2d 726, 630 P.2d 420 (1981), we answered the question whether the statute applied to a stepfather who had never lived with his stepchild. We rejected a Department of Social and Health Services' argument that RCW 26.16.205 created obligations between stepparents and stepchildren that were equal to those between natural parents and their children and held that the family expense statute did not apply to a noncustodial stepfather. In *Van Dyke* we held that RCW 26.16.205 was consistent with and a codification of the common-law principle that only a stepparent standing in loco parentis was required to contribute to the needs of a stepchild. *Van Dyke*, 95 Wn.2d at 728-29. *See also In re the Marriage of Schweitzer*, 132 Wn.2d 318, 331, 937 P.2d 1062 (1997) (citing to *Van Dyke* for the rule that a noncustodial stepparent is not required to support a stepchild, the court held a stepfather had no legal obligation to support his stepchild after the child left home). Because *Van Dyke* held the stepfather in that case did not have a duty to support the child, it did not interpret the language of the statute with respect to termination of that duty.

In *In re Montell*, 54 Wn. App. 708, 775 P.2d 976 (1989), the Court of Appeals held the statute did not apply to a stepfather who, with his wife, cared for his wife's children for two years while the children's father and legal custodian was in prison. The Court of Appeals, applying common-law principles, held that the stepfather did not stand in loco parentis to the children because he never intended to have the children reside with him permanently and did not

intend to take on the responsibility of a custodial steppar-
ent. At common law the status of one standing in loco pa-
rentis is voluntary and temporary and may be abrogated at
will by either the person standing in loco parentis or by the
child. *Taylor v. Taylor*, 58 Wn.2d 510, 513, 364 P.2d 444
(1961).

In *Komm v. Department of Soc. & Health Servs.*, 23 Wn.
App. 593, 597 P.2d 1372 (1979), the Court of Appeals held
that a child support obligation owed to the State for foster
care expenses for two children who were removed from the
mother and stepfather's care and placed in foster care was
a community debt that could be collected out of the earn-
ings of the stepfather.

In three cases, the Court of Appeals interpreted RCW
26.16.205 as requiring a stepparent to contribute to the
support of stepchildren after separation but before dissolu-
tion of the marriage between the custodial parent and the
stepparent. *Stahl v. Department of Soc. & Health Servs.*, 43
Wn. App. 401, 717 P.2d 320 (1986) (obligation to support
stepchildren continues until marriage is legally dissolved);
*Groves v. Department of Soc. & Health Servs.*, 42 Wn. App.
84, 709 P.2d 1213 (1985) (same); *State v. Gillaspie*, 8 Wn.
App. 560, 507 P.2d 1223 (1973) (stepfather who had
separated from stepchild's mother was charged under crim-
inal nonsupport statute, former RCW 26.20.030(1)(b)).

The Legislature again amended RCW 26.16.205 in 1990.
That amendment permits a trial court to terminate a step-
parent's obligation under the family expense statute after a
petition for marriage dissolution has been filed. The amend-
ment also clarifies that termination of the husband and
wife relationship includes legal separation as well as dis-
solution and death. LAWS OF 1990, 1st Ex. Sess., ch. 2, § 13.

The statute, as amended in 1990, now provides:

> The expenses of the family and the education of the chil-
> dren, including stepchildren, are chargeable upon the property
> of both husband and wife, or either of them, and they may be
> sued jointly or separately. When a petition for dissolution of
> marriage or a petition for legal separation is filed, the court

may, upon motion of the stepparent, terminate the obligation to support the stepchildren. The obligation to support stepchildren shall cease upon the entry of a decree of dissolution, decree of legal separation, or death.

RCW 26.16.205.

In 1992, the Court of Appeals decided *In re Marriage of Farrell*, the decision which is in conflict with the Court of Appeals' decision in the present case. In *Farrell*, Michelle Spencer, the teenage daughter of Irene Spencer, left the family home of her mother and stepfather, claiming her stepfather was mistreating her. She sought refuge with Sandra and Robert Brewer, a couple who later agreed to become Michelle's custodians. The Brewers filed a third-party custody action under RCW 26.10 and were awarded custody of Michelle in an agreed order. Child support was not mentioned in the custody order, and the Brewers later sought child support from both natural parents and from the stepfather. The trial court held the stepfather was equally obligated, with both parents, for Michelle's support. The Court of Appeals reversed, holding RCW 26.10.050, part of the third-party custody statute, authorizes a trial court to order current and future support only from one or both parents and, under RCW 26.19.071(1), the stepfather's income could not be used to determine the support amount. *In re Farrell*, 67 Wn. App. at 367, 368. The Court of Appeals described the obligation of the stepfather under RCW 26.16.205 as follows:

> As a custodial stepparent, in loco parentis to Michelle, [the stepfather] had both a common law and statutory duty to support her while she lived with him and her mother.
>
> RCW 26.16.205 further provides the support obligation of a stepparent ceases upon termination of the marital relationship. It does not address the situation here.

*In re Farrell*, 67 Wn. App. at 366. The *Farrell* court held that in enacting the family expense statute, the Legislature did not evidence an intent to change the common law with respect to the child's ability to end an in loco parentis rela-

tionship and, therefore, the stepfather's obligation to support Michelle was governed by common-law principles and ended when she left the family home. The Court of Appeals held that any support ordered under RCW 26.16.205 for recovery of past expenses would have to be based on the amount expended for Michelle's care. *In re Farrell*, 67 Wn. App. at 367-68.

In the present case, the Court of Appeals held that while RCW 26.16.205 does not, in clear and unambiguous language, set forth a new rule redefining how the stepparent's duty of support arises, "the statute does, in clear and unambiguous language, redefine the events that terminate the duty of support once it has arisen: 'entry of a decree of dissolution, decree of legal separation, or death.' " *Harmon*, 83 Wn. App. at 600. Specifically rejecting the *Farrell* analysis, the Court of Appeals in *Harmon* reasoned that the statute lists the only events that will terminate the support obligation once a stepparent assumes the status of in loco parentis to a stepchild. "Under the statute's bright-line rule, fixed and formal events now measure the extent of a stepparent's support obligation." *Harmon*, 83 Wn. App. at 601.

■ With this background in mind, we begin our analysis of the issue before us. We turn first to this state's child support schedule, RCW 26.19, the Legislature's latest pronouncement of the public policy that governs determinations of child support. The schedule, guidelines and standards contained in RCW 26.19 apply to all proceedings in which temporary or permanent child support is determined or modified. RCW 26.19.035(1). This includes all administrative proceedings under RCW 74.20A, as well as judicial proceedings, in which child support is determined. RCW 26.19.035(1)(b). *See also* RCW 26.09.100(1) (in proceeding for dissolution, legal separation, declaration of invalidity, maintenance or child support, amount of child support to be determined under RCW 26.19); RCW 26.10.045-.050 (in third-party custody action, child support to be based on schedule and standards adopted under RCW 26.19); RCW

26.26.130(5) (in parentage action, child support to be determined under RCW 26.19); RCW 74.20A.030(4), .055, .059 (Department of Social and Health Services to apply child support schedule and standards set forth in RCW 26.19 when calculating and ordering child support); RCW 13.34.160 (child support ordered for dependent child to be according to the schedule and standards set forth in RCW 26.19).[10]

 Therefore, our interpretation of any child support obligation imposed by RCW 26.16.205 must be made in light of the standards and policies set forth in RCW 26.19.[11]

One of the overriding policies and a standard of the statewide child support schedule is that the obligation to support a child should be equitably apportioned between the *parents* of the child. *See, e.g.*, RCW 26.19.001; LAWS OF 1987, ch. 440, § 2(2)(e) (the support amount shall be based on the child's age, the parent's combined income, and the family size); WASHINGTON STATE CHILD SUPPORT SCHEDULE COMM'N REP. TO THE LEGISLATURE 8-9 (Nov. 1987).

Another aim of the law is to provide uniformity throughout the state for calculating support obligations. RCW 26.19.001(3); *In re Marriage of Sacco*, 114 Wn.2d 1, 3, 784 P.2d 1266 (1990). To that end, the law requires worksheets and instructions that must be used in every case. RCW 26.19.050; RCW 26.19.035(3)-(4); *Sacco*, 114 Wn.2d at 3.

RCW 26.19.035(3) provides:

Worksheets in the form developed by the office of the administrator for the courts shall be completed under penalty

---

[10]The Department's own regulations require the basic support obligation to be determined according to RCW 26.19. WAC 388-11-205.

[11]In its response to amici, the Department argues that this court should not consider the mandates of RCW 26.19 because that statute's application was not raised as an issue below. Because it is our primary child support statute and because its standards must be applied in every case in which child support is determined, RCW 26.19.035, we are not able to decide this appeal without reference to RCW 26.19. *See City of Tacoma v. Luvene*, 118 Wn.2d 826, 832-33, 827 P.2d 1374 (1992) (it is proper for the court to consider issues raised by amici when there is no dispute about the law to be applied).

of perjury and filed in every proceeding in which child support is determined. The court[12] shall not accept incomplete worksheets *or worksheets that vary from the worksheets developed by the office of the administrator for the courts.*

(Emphasis added.)

The worksheets are divided into six parts. The basic child support obligation is determined under Part I and is based on the monthly incomes of the parents of the child whose support is being determined. Once the combined net monthly income is determined pursuant to RCW 26.19.071, a presumptive amount of child support is calculated, based on the child support economic table contained in RCW 26.19.020.

RCW 26.19.071(1) sets the standard for determining the income, upon which the basic child support obligation is based, as follows:

All income and resources of each parent's household shall be disclosed and considered by the court when the court determines the child support obligation of each parent. *Only the income of the parents of the children whose support is at issue shall be calculated for purposes of calculating the basic support obligation. Income and resources of any other person shall not be included in calculating the basic support obligation.*

(Emphasis added.)

A new spouse's, or stepparent's, income must be listed under Part VI (Additional Factors for Consideration) but may not be used to calculate the presumptive basic support obligation. In the present case, under the child support statute, only the mother's income and the father's income should have been used to determine the presumptive basic support obligation.

A court may deviate from the presumptive amount, but deviations are the exception to the rule and should not

---

[12]"Court" includes officers who administratively determine child support orders. RCW 26.19.011(3).

be used routinely. *In re Marriage of Oakes*, 71 Wn. App. 646, 652 n.4, 861 P.2d 1065 (1993). Additionally, the income of a new spouse is not, by itself, a sufficient reason for deviation. RCW 26.19.075(1)(a)(i).

In making its recommendation to the Legislature, the Child Support Schedule Commission considered the use of the support schedule in families involving stepparents. The Commission reported to the Legislature that it was guided in part by the principle that the child support schedule "should not create extraneous negative effects on the major life decisions of either parent. The schedule should avoid creating economic disincentives for remarriage . . . ." REPORT at 8. The Commission also recommended that whatever approach was adopted by the Legislature, it should "treat both parents in the same way, either including or excluding the income of new spouses . . . ." REPORT at 21. In a special report on the use of the schedule for blended families, the Commission recommended that the "income of spouses [of the child's parents] should be disregarded in any formula approach." WASHINGTON STATE CHILD SUPPORT SCHEDULE COMM'N REP. ON USE OF SUPPORT SCHEDULE FOR BLENDED FAMILIES 3 (Dec. 1989).

The Legislature accepted the Commission's recommendation, enacting the following provisions:

(1) Reasons for deviation from the standard calculation include but are not limited to the following:

(a) **Sources of income and tax planning.** The court may deviate from the standard calculation after consideration of the following:

(i) Income of a new spouse if the parent who is married to the new spouse is asking for a deviation based on any other reason. Income of a new spouse is not, by itself, a sufficient reason for deviation;

. . . .

(2) All income and resources of the parties before the court, new spouses, and other adults in the households shall be disclosed and considered as provided in this section. The

presumptive amount of support shall be determined according to the child support schedule. Unless specific reasons for deviation are set forth in the written findings of fact and are supported by the evidence, the court shall order each parent to pay the amount of support determined by using the standard calculation.

RCW 26.19.075.

The child support schedule and standards which are pertinent to this case are: (1) the child support schedule and standards apply in every case in which child support is determined in this state; (2) the mother and father of a child are responsible for the support of that child; (3) official, unaltered child support worksheets must be used in every case in which child support is determined; (4) the basic child support obligation is determined under the child support schedule and is based on the combined monthly net incomes of the child's mother and father; (5) a stepparent's income should be considered by the court but may not be used to determine the basic support obligation; (6) a stepparent's income may be used to deviate from the basic support obligation, but the stepparent's income cannot be the only reason for the deviation.

We now examine RCW 26.16.205 in light of the child support statute.

The Department argues that RCW 26.16.205 creates a child support obligation on the part of a stepparent that (1) arises when the child begins living in the home of the stepparent, (2) is equal to that of the child's natural parents, and (3) does not end until a court order is entered in a dissolution or legal separation action, or until dissolution, legal separation or death.

Two questions are considered in our analysis. The first is whether the statute imposes a child support obligation on a stepparent that is equal to that of the child's parents. The second is whether the statute provides the only means of ending whatever obligation is created by RCW 26.16.205. We answer both questions in the negative.

First, to interpret the family expense statute in a manner that makes stepparents equally responsible, with parents, for child support would require us to disregard the language and the impact of our child support schedule and to judicially create an exception to RCW 26.19. We cannot construe RCW 26.16.205 to conflict with the language or the purposes of RCW 26.19. *See Bour v. Johnson*, 122 Wn.2d 829, 835, 864 P.2d 380 (1993) (statutes on the same subject matter must be read together to give each effect and to harmonize each with the other); *Leson v. State*, 72 Wn. App. 558, 563, 864 P.2d 384 (1993) (when two statutes appear to conflict, every effort should be made to harmonize their respective provisions).

The family expense statute is not a child support statute but, rather, a statute that makes both parties to a marriage equally responsible for the necessary expenses of the family. *Haddad*, 153 Wash. at 164-65. The family includes stepchildren who are part of the family unit, who reside in the family home, or who are in the residential care of one of the adults in this family unit. It does not include children who are in the primary residential care of the other parent.

With respect to the language regarding termination of a stepparent's obligation under the family expense statute, we believe the Legislature intended only to distinguish between parents and stepparents to the extent that the obligation, once assumed, would not continue for stepparents beyond the termination of the marriage. The parent's obligation for the support of a child continues and is not dependent on the continuation of the marital relationship. The provision for terminating a stepparent's obligation under the statute is not the exclusive means for terminating the obligation. Notwithstanding the statute's specific and limiting language, any support obligation for a child may terminate when the child reaches the age of majority, is married, emancipated or otherwise no longer dependent. Because we hold the stepfather in this appeal was not primarily liable for the support of his wife's children

after the court ordered the placement of the children be changed to their father, we do not determine what other ways the obligations that arise under the family expense statute might terminate.

## CONCLUSION

The child support schedule and standards set forth in RCW 26.19 govern all child support determinations in this state. RCW 26.16.205, the family expense statute, may not be used as a separate child support statute to hold noncustodial stepparents equally responsible, with the parents, for the support of stepchildren.

Reversed.

DURHAM, C.J., and DOLLIVER, SMITH, JOHNSON, MADSEN, and SANDERS, JJ., concur.

TALMADGE, J. (dissenting) — Basing its opinion on the child support schedule in RCW 26.19, but ignoring the specific statutory language of RCW 26.16.205 which establishes the responsibility of a stepparent for stepchild support, the majority holds a stepparent is not obligated to pay child support for a stepchild. Because RCW 26.16.205 specifies stepparent liability for child support and clear conditions for terminating such support, none of which applies here, I respectfully dissent.

As an initial procedural question, the parties to this action did not raise the child support schedule, RCW 26.19, as a basis for resolving the issues in this case. RCW 26.19 was raised for the first time, however, in a brief of amici curiae in this Court. But no mention of this issue was made in briefs presented to the Court of Appeals, the petition for review to this Court, or the answer to the petition for review. While I agree in principle that we may decide a case based on clear and dispositive precedent not argued by the parties, *see* Majority op. at 538 n.11 (citing *City of Tacoma v. Luvene*, 118 Wn.2d 826, 832-33, 827 P.2d 1374 (1992));

*see also Alverado v. Washington Pub. Power Supply Sys.*, 111 Wn.2d 424, 429-30, 759 P.2d 427 (1988), *cert. denied*, 490 U.S. 1004, 109 S. Ct. 1367, 104 L. Ed. 2d 153 (1989); *Bitzan v. Parisi*, 88 Wn.2d 116, 126, 558 P.2d 775 (1977), I disagree that RCW 26.19 is clearly dispositive of the central issue in this case. Insofar as the interplay of RCW 26.19 with RCW 26.16.205 has not been adequately addressed by the lower courts or by the parties to this case, I am reluctant to support the majority's resolution of the case based on application of RCW 26.19. In this case, it is appropriate to adhere to the well established rule that new issues may not be raised for the first time on appeal by amici curiae. *See Long v. Odell*, 60 Wn.2d 151, 154, 372 P.2d 548 (1962); *State v. Clark*, 124 Wn.2d 90, 101, 875 P.2d 613 (1994), *overruled on other grounds by State v. Catlett*, 133 Wn.2d 355, 361, 945 P.2d 700 (1997); *State v. Gonzalez*, 110 Wn.2d 738, 752 n.2, 757 P.2d 925 (1988); *Coburn v. Seda*, 101 Wn.2d 270, 279, 677 P.2d 173 (1984); *Schuster v. Schuster*, 90 Wn.2d 626, 629, 585 P.2d 130 (1978).

However, even if we were to consider RCW 26.19, that statute does not resolve this case. RCW 26.16.205 imposes a statutory obligation upon stepparents to support their stepchildren:

> The expenses of the family and the education of the children, including stepchildren, are chargeable upon the property of both husband and wife, or either of them, and they may be sued jointly or separately. When a petition for dissolution of marriage or a petition for legal separation is filed, the court may, upon motion of the stepparent, terminate the obligation to support the stepchildren. *The obligation to support stepchildren shall cease upon the entry of a decree of dissolution, decree of legal separation, or death.*

(Emphasis added.) The statute is very explicit as to the circumstances under which the support obligation of stepparents to stepchildren ceases: the obligation ceases *only* upon the entry of a decree of dissolution, a decree of legal separation, or death of the stepparent. The statute makes no mention of children leaving the stepparent's home or

care as a contingency defeating the stepparent's support obligation. As none of the statutory contingencies was present in this case, Mr. Harmon's obligation to support his stepdaughters did not terminate.

This interpretation of RCW 26.16.205 is consistent with prior Washington case law. A stepparent who establishes a parental relationship with a stepchild owes a support obligation to that child. *Stahl v. Department of Soc. & Health Servs.*, 43 Wn. App. 401, 404, 717 P.2d 320 (1986); *Groves v. Department of Soc. & Health Servs.*, 42 Wn. App. 84, 86-87, 709 P.2d 1213 (1985); *State v. Gillaspie*, 8 Wn. App. 560, 562-63, 507 P.2d 1223 (1973). The determination of Division Three of the Court of Appeals in *In re Marriage of Farrell*, 67 Wn. App. 361, 835 P.2d 267 (1992), that RCW 26.16.205 was intended to apply only to "custodial stepparents" and the support obligation of a stepparent terminates upon the child's voluntary severance of the parental relationship with the stepparent is unsupported by the express statutory language and should be specifically disapproved.[13]

---

[13]The Court of Appeals in *Farrell* relied on *Van Dyke v. Thompson*, 95 Wn.2d 726, 630 P.2d 420 (1981). In *Van Dyke*, we held the Department of Social and Health Services had no authority to collect the wages of a noncustodial stepparent to satisfy the noncustodial parent's support obligation from a previous marriage. This result followed from the language of the 1969 version of RCW 26.16.205, which stated:

The expenses of the family and the education of the children, *including stepchildren*, are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately; *Provided, That with regard to stepchildren, the obligation shall cease upon the termination of the relationship of husband and wife.*

*Van Dyke*, 95 Wn.2d at 728. This emphasized language is plainly different from the present version of RCW 26.16.205, amended in 1990.

Moreover, in *In re Marriage of Schweitzer*, 132 Wn.2d 318, 331, 937 P.2d 1062 (1997), we indicated a stepfather had no legal obligation to support a stepson after he left home to attend college. There, the stepson was an adult. The legal obligation of parents to support children ordinarily does not extend beyond their minority. RCW 26.09.170(3), provides "[u]nless otherwise agreed in writing or expressly provided in the decree, provisions for the support of a child are terminated by emancipation of the child[.]" As used in the statute, emancipation occurs when the child reaches the age of majority or is emancipated in fact, whichever occurs first. *In re Marriage of Gillespie*, 77 Wn. App. 342, 346, 890 P.2d 1083 (1995); *In re Marriage of Nielsen*, 52 Wn. App. 56, 59, 757 P.2d 537, *review*

The majority assumes the child support schedule in RCW 26.19 somehow supersedes the provisions of RCW 26.16.205. I disagree. The child support schedule in RCW 26.19 primarily addresses calculation of the *amount* of child support to be established in a particular case, but RCW 26.16.205 establishes *liability*; that is, *who must pay child support*. The legislative history of RCW 26.19 and amendments to RCW 26.16.205 confirm this interpretation. RCW 26.19 was enacted in 1988 and did not purport to repeal RCW 26.16.205. *See* LAWS OF 1988, ch. 275. In fact, language regarding child support was added to RCW 26.16.205 *in 1990*, two years *after* the adoption of the child support schedule legislation. *See* LAWS OF 1990, 1st Ex. Sess., ch. 2, § 13 (adding the last two sentences of the current statute, clarifying when the obligation of a stepparent to support a stepchild is terminated). This would suggest the Legislature continued to believe in 1990, despite the child support schedule, that stepparents were responsible for child support until such time as the three specific contingencies set forth in RCW 26.16.205 took place. *See Elford v. City of Battle Ground*, 87 Wn. App. 229, 235, 941 P.2d 678 (1997) (when Legislature amends legislation, it is presumed it considered earlier enactments dealing with the same subject matter). *See also Department of Fisheries v. Public Util. Dist. No. 1 of Chelan County*, 91 Wn.2d 378, 383, 588 P.2d 1146 (1979); *State v. Roth*, 78 Wn.2d 711, 715, 479 P.2d 55 (1971) (Earlier enactments dealing with the same subject matter are presumed to have been considered by the Legislature when it amends legislation. Any new provisions of a statute are then deemed adopted in light of and with reference to the earlier act.). However, it is again appropriate to reiterate none of the parties actually argued the effect of the enactment of RCW 26.19 on RCW

*denied*, 111 Wn.2d 1023 (1988); *Gimlett v. Gimlett*, 95 Wn.2d 699, 702, 629 P.2d 450 (1981). *See also In re Marriage of Kelly*, 85 Wn. App. 785, 790-93, 934 P.2d 1218 (citing RCW 26.19.090(2) and holding trial courts have broad discretion to determine whether and how long to order postmajority, postsecondary educational support), *review denied*, 133 Wn.2d 1014, 946 P.2d 402 (1997). *Schweitzer* is consistent with these principles. RCW 26.16.205, as presently written, does not compel stepparents to do any more than is required of parents generally.

26.16.205. We should not allow injection of this issue into the case so late in the process.

Additionally, the policy rationale for stepparent support of stepchildren implicit in RCW 26.16.205 is compelling. In an era where marital dissolution is an all too often unfortunate reality, parents often remarry and families are made up of both natural children and stepchildren. Stepchildren, like natural children, require financial support. RCW 26.16.205 expressly recognizes this fact of financial survival for stepchildren. *Cf. State v. Gillaspie*, 8 Wn. App. 560, 562, 507 P.2d 1223 (1973) (noting the law has been developing toward the integration of stepchildren into the family with rights equal to those of natural children). If, by the adoption of the child support schedule in RCW 26.19 the Legislature has departed from this policy, it ought to expressly so indicate by repealing or amending RCW 26.16.205.

The provisions of RCW 26.16.205 are clear. Harmon is still responsible for child support for his stepdaughters. I would affirm the decision of the Court of Appeals and the trial court.

ALEXANDER, J., concurs with TALMADGE, J.