[No. 30234-5-I. Division One. November 15, 1993.]

*In the Matter of the Marriage of* GAIL J. OAKES,
*Respondent, and* DAVID G. OAKES,
*Appellant.*

*H. Michael Fields* and *Anderson & Fields,* for appellant.

*Rynold C. Fleck* and *Fleck Law Offices,* for respondent.

AGID, J. — David Oakes appeals the trial court's calculation of the parties' respective child support obligations for their two children and that portion of the decree requiring him to pay support based on the "Two Children Family" column of the Washington State Child Support Schedule Economic Table. We conclude that the Legislature did not contemplate the situation created by the Oakes' custody arrangement, but that the statute as currently written requires use of the "Two Children Family" portion of the table when each parent has primary residential care of one or more of the parties' children. We therefore affirm.

On January 31, 1992, the trial court entered a decree dissolving the marriage of David and Gail Oakes. That decree and the corresponding findings of fact and conclusions of law were based upon evidence presented during a 7-day trial in September 1991. David received primary residential care of the parties' son, Travis (age 12), and Gail received primary residential care of the parties' daughter, Courtnie (age 10).[1] The trial court determined that the parties' joint net monthly income was $5,459. After subtracting $650 from David's income and adding it to Gail's for maintenance, the court found that David's proportional share of the income was 59.8 percent and Gail's was 40.2 percent. The court then calculated each party's total child support obligation by using the figures in the Washington State Child Support Schedule Economic Table (the Table) under the column labeled "Two Children Family".

According to the 2-children-family figures, monthly child support for Travis was $768 and support for Courtnie was $622, for a total support obligation of $1,390. David's proportional share of that total obligation was $831.22, and Gail's was $558.78. The trial court ordered David to pay Gail the difference between those two figures, $272.44, as a transfer payment. David now appeals, arguing that the court should have treated the parties as if they each had a separate 1-child family and calculated their respective child support obligations for the child not residing primarily with each of them by using the figures in the column labeled "One Child Family".

At the outset, we note that when the Legislature enacted the child support statute, it did not consider this issue and thus did not establish a method of calculating child support

---

[1]Travis is presently 14 and Courtnie is 12. Thus, the monthly basic support obligation for each child is now equal as both are derived from the category for children ages 12-18. However, the issue is not moot because the decree requires periodic recalculation of the parties' support obligations. So long as David's income exceeds Gail's, he will be required to make a transfer payment. The amount of that payment must still be determined based on whether support is owed for a 1- or 2-child family.

when each party receives primary residential care of one or more of their children. The statute merely mandates that each party's basic child support obligation be "determined from the economic table based on the parties' combined monthly net income and the *number of children for whom support is owed.*" (Italics ours.) RCW 26.19.011(1).

David contends that the 2-children-family column is inapplicable because the figures are based on two assumptions: (1) that it is less expensive per child to raise two children than it is to raise one, and (2) that one parent has primary residential care of all the couple's children. Therefore, he argues, where one parent does not have primary residential care of all the children, the figures in the 2-children-family column do not reflect the actual costs of raising the children in separate households. Since he and Gail each have one child in a separate household, he concludes that the trial court should use the 1-child-family column which is a more economically accurate reflection of his and Gail's actual expenses for raising the children.

Under David's argument, he would owe $478.40 in child support for Courtnie (59.8 percent of $800) and Gail would owe $397.58 in support for Travis (40.2 percent of $989). David's transfer payment would then be $80.82. Implicit in this argument is the assumption that he is paying the balance ($591.42) of Travis' support of $989, and Gail is paying the balance ($321.60) of Courtnie's total support of $800.

We agree with David that the figures in the 2-children-family column are based on the assumption that one parent has primary custody of all the children and that it is less expensive per child to raise two or more children than it is to raise one. Both assumptions are apparent from the schedule's silence on split-custody situations and the fact that the support levels in the multiple-children-family columns are not multiples of those for a 1-child family. We also agree that David's argument has some economic logic. Raising two children in separate households will create some duplicate expenses which would not be incurred if both children resided in the same household and, conversely, some of the expenses

of maintaining a household are the same, or nearly the same, even though several children reside there. However, we disagree with his conclusion that the statute either mandates or permits the trial court to use a schedule other than the one based on the parents' total number of children when those parents have split custody of their children.

 Because the Legislature has not yet addressed this situation, we must construe the child support statute to achieve the overall purpose of the act. "[I]f alternative interpretations are possible, the one that best advances the overall legislative purpose should be adopted." *Anderson v. Morris*, 87 Wn.2d 706, 716, 558 P.2d 155 (1976). " 'Declarations of policy in an act, although without operative force in and of themselves, serve as an important guide in determining the intended effect of the operative sections.' " *Oliver v. Harborview Med. Ctr.*, 94 Wn.2d 559, 565, 618 P.2d 76 (1980) (quoting *Hearst Corp. v. Hoppe*, 90 Wn.2d 123, 128, 580 P.2d 246 (1978)). The overriding purpose of the child support schedule is to insure that children are protected with adequate, equitable and predictable child support. RCW 26.19.001.[2]

 In addition, while, as we stated above, we agree with the parties that the Legislature and the current child support schedule do not address the appropriate method of calculating child support where each party has primary resi-

---

[2]RCW 26.19.001 reads:

"The legislature intends, in establishing a child support schedule, to insure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard of living. The legislature also intends that the child support obligation should be equitably apportioned between the parents.

"The legislature finds that these goals will be best achieved by the adoption and use of a state-wide child support schedule. Use of a state-wide schedule will benefit children and their parents by:

"(1) Increasing the adequacy of child support orders through the use of economic data as the basis for establishing the child support schedule;

"(2) Increasing the equity of child support orders by providing for comparable orders in cases with similar circumstances; and

"(3) Reducing the adversarial nature of the proceedings by increasing voluntary settlements as a result of the greater predictability achieved by a uniform state-wide child support schedule."

dential care of one or more children, the language of the statute and the schedule support the trial court's resolution of the issue and do not support David's argument. Nothing in RCW 26.19 gives the court discretion to consider the parties and their households as two separate, 1-child families. Instead, each party's basic child support obligation is to be based on "the number of children for whom support is owed." RCW 26.19.011(1). Consistent with that mandate, the Table provides choices for the court among 1-child to 5-children *families*. Neither the statute nor the schedule distinguishes between parenting plans under which one parent assumes primary residential care for all of the children and those under which each parent assumes primary residential care for one or more of the children. Thus, we conclude that the language of the pertinent provisions requires the trial court to use the column on the Table that reflects the number of children of the parties in the family that existed prior to the dissolution.

While David raises a legitimate concern, it is one that the Legislature must address. It has the economic data upon which the existing schedule is based, and it is in the best position to determine the basis on which support should be calculated when both parents assume the primary residential care for one or more of their children.

■ We also recognize that, under some circumstances, setting child support at a level dictated by the total number of children may create hardships and inequities. Because the Legislature has not considered the situation created by split primary residential custody, it is appropriate for the trial court to consider whether a deviation is necessary under RCW 26.19.075[3] when applying the Table in this situation. The very fact that the schedule does not specifically provide direction when both parents have custody of one or more of the children is a basis for a deviation if strict application of the Table would result in a significant disparity in the amount of support

---

[3]RCW 26.19.075 sets forth a nonexclusive list of grounds for deviating from the standard child support calculation.

available for the children in each household. If the findings of fact and conclusions of law support a decision to deviate from the Table, the court may then exercise its discretion to order an appropriate deviation that will assure that both children are protected with adequate, equitable and predictable child support as required by RCW 26.19.001.[4]

In this case, the trial judge was asked to deviate from her determination that the 2-children-family support level should apply to the parties. Although there was no case law authorizing such a deviation, she nevertheless exercised her discretion and denied the deviation by concluding that the amount of support in this case, resulting in a transfer payment of $272.44 from David to Gail, was "established to provide a reasonable and equitable standard of living for each household." The findings and order re: child support, the findings of fact and conclusions of law and the decree entered in this case support the trial court's conclusion that a deviation was not appropriate because it would have resulted in widely disparate levels of support for the parties' two children. The court did not abuse its discretion in so concluding. *In re Marriage of Glass*, 67 Wn. App. 378, 384, 835 P.2d 1054 (1992).

The findings of fact, conclusions of law, and the dissolution decree are affirmed.

PEKELIS, A.C.J., and COLEMAN, J., concur.

---

[4]This is not to say that deviations should become routine. They remain the exception to the rule and should be used only when it would be inequitable to do otherwise. We are confident that the trial courts can return to the first principles of dissolution law and exercise their discretion to achieve an equitable result in these cases.