[No. 35940-5-II.   Division Two.   February 20, 2008.]

*In the Matter of the Marriage of* ELAINE IRENE CHOATE, *Appellant,* and FREDERICK LEWIS CHOATE, *Respondent.*

*Frederick L. Choate*, pro se.

*James H. MaGee* (of *Law Office of James H. MaGee*), for appellant.

¶1  Van Deren, A.C.J. — In this child support modification case, Elaine Choate appeals the trial court's order granting a deviation from the standard child support schedule based on the birth of a new child to Frederick Choate,[1] Elaine's former husband and father of their two children. She contends that the trial court (1) failed to consider the total circumstances of both households, (2) failed to enter written findings of fact supporting the child support deviation reducing Frederick's support obligation for their children, and (3) improperly calculated their gross income. We vacate, reverse, and remand, directing the trial court to consider all circumstances of both households and to enter findings supporting any decision to deviate from the standard support calculation.

## FACTS

¶2  On December 12, 2006, Frederick filed a motion to modify his existing child support obligation for the two children of his former marriage. He based his request on the birth of his third child, born to his current companion, Rayanne Sasser. Apparently, the trial court ruled at the time of dissolution that Frederick could seek a modification after the third child was born. Elaine objected to any modification, arguing that Frederick had failed to show paternity and that his motion was procedurally defective. On January 18, 2007, Frederick filed a paternity affidavit establishing his paternity.

---

[1] We refer to the parties by their first names to avoid confusion. We mean no disrespect.

¶3 At the February 2, 2007, hearing on the matter, the trial court granted Frederick a modification of child support under RCW 26.19.075(1). The trial court stated that it considered (1) Frederick's average monthly income for 2005 and 2006 based on his 2005 tax return and 2006 W-2 form, (2) Elaine's gross monthly income of $2,426.67 minus her 2006 deductions, and (3) the total circumstances of both households.

¶4 The trial court's child support schedule worksheet shows that Frederick's "monthly income of $4,845.72 is based on the average gross monthly income of the father for 2005 and 2006 tax returns and W-2's"[2] and that Elaine's "gross monthly income is based on her hourly rate of $14/hour x 40 hrs = $2426.70." Clerk's Papers (CP) at 227. The original child support order states that Frederick's proportional share of their total income is 63 percent and that the standard child support payment due from him was $721.00. The trial court then reduced Frederick's support obligation to $585.87, based on the "Whole Family Formula" because Frederick has a child with Sasser. CP at 218.

¶5 The trial court attached an unofficial electronically generated worksheet[3] entitled "Whole Family Formula Deviation" that mechanically allocates the parents' child support obligations based on the RCW 26.19.020 child support economic tables, each parent's proportional share of income, and the standard calculation defined in RCW

---

[2] We note that Frederick did not produce an income tax return for 2006 but, rather, only the W-2 for 2006. The order of child support was entered in February 2007. The trial court's oral ruling stated that Frederick's "gross monthly income shall be based on the average of his 2005-2006 income. The 2006 income shall be based on the 2006 W2 form that was submitted. And the 2005 income shall be based on the tax return that was filed." Report of Proceedings at 25.

[3] RCW 26.19.050(1) provides that the "administrative office of the courts shall develop and adopt worksheets and instructions to assist the parties and courts in establishing the appropriate child support level and apportionment of support" and RCW 26.19.035(3) states that

[w]orksheets in the form developed by the administrative office of the courts shall be completed under penalty of perjury and filed in every proceeding in which child support is determined. The court shall not accept incomplete worksheets or worksheets that vary from the worksheets developed by the administrative office of the courts.

26.19.011(8).[4] CP at 229. Other than referring to Frederick's child with Sasser, the trial court did not make findings of fact supporting the downward deviation or the method used to derive the final child support transfer payment.

¶6 Elaine appeals.

## ANALYSIS

¶7 Elaine contends that the trial court "abused its discretion in failing to consider the total circumstances of both households when granting the deviation" to Frederick by reducing his support for their two children from $721.00 to $585.87. Br. of Appellant at 22. She argues that the trial court "erred in failing to consider the income and expenses of [Frederick]'s co-resident, [Sasser], in granting a deviation." Br. of Appellant at 10. Elaine also contends that the trial court erred in failing to make specific findings supporting the deviation.

I. STANDARD OF REVIEW

¶8 We will not reverse the trial court's decision to modify child support absent a manifest abuse of discretion. *In re Marriage of McCausland*, 159 Wn.2d 607, 616, 152 P.3d 1013 (2007). And we "cannot substitute [our] judgment for that of the trial court unless the trial court's decision rests on unreasonable or untenable grounds." *In re Marriage of Leslie*, 90 Wn. App. 796, 802-03, 954 P.2d 330 (1998). "A trial court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law." *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons Corp.*, 122 Wn.2d 299, 339, 858 P.2d 1054 (1993). We must look to the child support schedule statute, chapter 26.19 RCW, and determine if the trial court abused its discretion in modifying the order of child support and granting a downward

---

[4] RCW 26.19.011(8) defines "standard calculation" as "the presumptive amount of child support owed as determined from the child support schedule before the court considers any reasons for deviation."

deviation. We grant deference to the trial court's domestic relations decisions because (1) they involve emotional and financial interests that are best served by finality and de novo review may encourage appeals and (2) abuse of discretion is the proper standard of review when the trial court relies solely on documentary evidence in reaching its decision. *See In re Parentage of Jannot*, 149 Wn.2d 123, 126-28, 65 P.3d 664 (2003).

## II. DEVIATION FROM STANDARD CHILD SUPPORT CALCULATION

¶9 Chapter 26.19 RCW governs the calculation of child support and any deviation from the standard calculation. RCW 26.19.071(1) states that "[o]nly the income of the parents of the children whose support is at issue shall be calculated for purposes of calculating the basic support obligation. Income and resources of any other person shall not be included in calculating the basic support obligation." RCW 26.19.035(2) states that "[a]n order for child support . . . shall include reasons for any deviation from the standard calculation." And RCW 26.19.075(1)(e) states that

[t]he court may deviate from the standard calculation when either or both of the parents before the court have children from other relationships to whom the parent owes a duty of support.

(i) The child support schedule shall be applied to the mother, father, and children of the family before the court to determine the presumptive amount of support.

(ii) Children from other relationships shall not be counted in the number of children for purposes of determining the basic support obligation and the standard calculation.

(iii) When considering a deviation from the standard calculation for children from other relationships, the court may consider only other children to whom the parent owes a duty of support. The court may consider court-ordered payments of child support for children from other relationships only to the extent that the support is actually paid.

(iv) *When the court has determined that either or both parents have children from other relationships, deviations under this*

*section shall be based on consideration of the total circumstances of both households.* All child support obligations paid, received, and owed for all children shall be disclosed and considered.

(Emphasis added.)

¶10 A trial court clearly has discretion to deviate from the standard calculation based on a parent's duty of support to another child. *See* RCW 26.19.075; *see also In re Parentage of J.M.K.*, 155 Wn.2d 374, 387-88, 119 P.3d 840 (2005) (paternity affidavit establishes the duty of support regardless of marital status); *In re Marriage of Bell*, 101 Wn. App. 366, 371 n.9, 4 P.3d 849 (2000); *Fernando v. Nieswandt*, 87 Wn. App. 103, 111, 940 P.2d 1380 (1997) (" 'duty of support' . . . means all support obligations, not merely payments of court-ordered child support."). The statute also unequivocally requires written findings of fact to support any deviation and a consideration of the total circumstances of both households. *McCausland*, 159 Wn.2d at 620 ("Although cursory findings of fact and the trial record might appear to justify awarding a child support amount that exceeds the economic table, only the entry of written findings of fact demonstrate that the trial court *properly exercised its discretion* in making the award.").

¶11 Furthermore, RCW 26.19.035(3) states that the trial "court shall not accept . . . worksheets that vary from the worksheets developed by the administrative office of the courts." And the appendix to chapter 26.19 RCW does not list a worksheet entitled "Whole Family Formula Deviation." CP at 227. The trial court's acceptance of, and reliance on, these worksheets without findings showing consideration of all household circumstances constitutes error similar to that our Supreme Court noted in *McCausland*. As in *McCausland*, any deviation from the standard calculation is necessarily a fact-intensive decision. 159 Wn.2d at 620.

¶12 Here, the child support order states only that the reason for deviation was "Whole Family Formula applied,"

and the trial court attached a form worksheet entitled "Whole Family Formula Deviation." CP at 218, 229. This worksheet mechanically calculates the "Whole Family Deviation Amount" based on the total number of Frederick's children, using only Elaine and Frederick's combined net monthly income for the new standard support obligation and Frederick's proportional share of that obligation. CP at 229. It did not address Sasser's income or the circumstances of Frederick and Sasser's household.[5] It, thus, appears to simply recalculate child support based on the children from the former marriage and any new children, in this instance Frederick and Sasser's child, without explanation of how all involved parents' circumstances affect the childrens' needs.

¶13 Although the trial court indicated it was aware of Sasser's income at the February 2 hearing, it did not enter written findings reflecting its consideration of "[a]ll income and resources" of each parent's household or "the total circumstances of both households." RCW 26.19.075(2), (1)(e)(iv). Instead, it relied on an unapproved worksheet that provided an amount not supported by factual findings. In *McCausland*, our Supreme Court held that unsupported extrapolation of child support is an abuse of discretion. 159 Wn.2d at 620-21. An unsupported deviation is also an abuse of discretion.

¶14 In *McCausland*, the trial court directly extrapolated beyond the standard support calculation when the parents' combined incomes exceeded $7,000 per month. 159 Wn.2d at 613-14. In reversing the trial court's child support order, the court noted that none of the appellate courts had ruled correctly on extrapolating an increased amount of child support from the approved child support schedule. *McCausland*, 159 Wn.2d at 619. It held that, because the legislature did not provide for the extrapolation of child support for high-income families, trial courts must support any order exceeding the standard calculation with specific

---

[5] At oral argument, Frederick represented that he provided a home for Sasser and their child, that she did not pay rent, and that they kept their finances separate.

findings showing extraordinary expenses or circumstances necessitating the excess child support. *McCausland*, 159 Wn.2d at 620-21.

¶15 Here, contrary to RCW 26.19.075(1)(e), the trial court relied on a worksheet that excludes consideration of Sasser's income and the total circumstances of both households. Acknowledgement of other children and the mere listing of other household income or a recitation that the trial court considered or was aware of other household income are insufficient to support a child support deviation.

¶16 We hold that a trial court's reliance on an unapproved worksheet does not satisfy chapter 26.19 RCW or *McCausland*. Written findings of fact supported by substantial evidence are required when a trial court deviates from the standard support calculation. *McCausland*, 159 Wn.2d at 620-21 (mechanical extensions of chapter 26.19 RCW do not satisfy the statute's requirements).

¶17 Thus, we vacate and reverse its child support order modifying Frederick's support obligation and remand for further proceedings consistent with this opinion.

III. INCOME CALCULATION

¶18 Elaine also contends that the trial court erroneously calculated both parties' gross monthly income. First, she argues that the trial court unfairly averaged Frederick's gross pay for the prior 24 months, but used only the previous 4½ months in averaging hers. But this argument ignores Elaine's assertion before the trial court that, because she was previously unemployed, her income should be imputed. And RCW 26.19.071(6) states that a trial "court shall not impute income to a parent who is gainfully employed on a full-time basis." Therefore, the trial court properly considered Elaine's new job in calculating her income.

¶19 Next, Elaine complains that while the trial court used her pay stubs, it used Frederick's 2005 tax return and his 2006 W-2; therefore, she was denied her

right to equal protection. But Elaine did not allege that Frederick received a recent significant increase in pay that affected his child support obligation, nor does Elaine explain why the W-2 form that the trial court considered was less accurate than a corresponding collection of pay stubs. Moreover, she did not raise an equal protection argument before the trial court.

¶20 Generally, an issue cannot be raised for the first time on appeal unless it is a "manifest error affecting a constitutional right." RAP 2.5(a)(3). Whether RAP 2.5(a)(3) applies is based on a two-part test: (1) whether the alleged error is truly constitutional and (2) whether the alleged error is manifest. *State v. WWJ Corp.*, 138 Wn.2d 595, 602, 980 P.2d 1257 (1999). An error is manifest when it had practical and identifiable consequences in the trial at issue. *WWJ Corp.*, 138 Wn.2d at 603; *see also State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995) (An appellant "must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the [appellant]'s rights.").

¶21 We decline to address this argument because (1) Elaine identifies no manifest error affecting a constitutional right; (2) Elaine fails to support her contention with authority or argument; and (3) in view of our decision to reverse and remand, the parties' incomes will be recalculated based on newer and more comprehensive evidence of income and household circumstances and, therefore, we do not further address Elaine's issues relating to the trial court's income calculations.[6]

---

[6] Elaine also argues that Frederick overstated his monthly day care expenses when he claimed $1,000 a month on his January 18, 2007, financial declaration. She raises this issue only as it relates to her assertion that the trial court failed to properly consider its decision to deviate. Because we remand, we leave this issue to the trial court to resolve in its consideration of all circumstances of both households. We recognize that, on remand, the trial court will have the opportunity to review additional income information and household circumstances of all parents, as well as additional information on the children's needs.

IV. ATTORNEY FEES

¶22 Elaine requests attorney fees of $3,380 and costs of $583 on appeal under RCW 26.09.140 and *In re Marriage of Bell*, 101 Wn. App. 366, 379, 4 P.3d 849 (2000). Br. of Appellant at 28. RCW 26.09.140 allows an appellate court to, "in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney[ ] fees in addition to statutory costs" based on "the financial resources of both parties." Frederick does not seek attorney fees or costs but argues that "[t]here is no surplus in either parties['] household[ ]." Br. of Resp't at 18.

¶23 Elaine substantially prevailed on appeal. Both parties' financial declarations appear in the appellate record, although Frederick's does not reveal contributions from Sasser to the household or to their child's expenses. Based on the financial information before us, it appears that Frederick has the resources to pay some or all of Elaine's attorney fees and costs on appeal. Accordingly, we grant Elaine's request for reasonable attorney fees and costs in an amount to be determined by a commissioner of this court.

¶24 We vacate and reverse the trial court's child support order and remand for further proceedings consistent with this opinion.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.