# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In re the Parenting and Support of: | No. 50986-5-II |
| Children: | |
| P.C. | UNPUBLISHED OPINION |
| Petitioner: | |
| CINDY CHOW | |
| And Respondent: | |
| JACOB COBUN | |

GLASGOW, J. — Cindy Yen Chow and Jacob Christopher Cobun lived together for about four years and they had one child together. After they broke up, the superior court awarded child support and granted Cobun a $100 per month downward deviation, meaning that he would pay $100 less per month than the standard child support calculation would have required. Chow appeals.

Chow argues the superior court abused its discretion when it allowed Cobun the downward deviation because (1) neither the facts nor findings support a conclusion that ordering Cobun to pay the full standard calculation amount would be inequitable, (2) the court relied on an unapproved worksheet, and (3) the court's findings of fact do not support a downward deviation. Cobun argues the superior court did not err and requests attorney fees on appeal.

We affirm the superior court's child support order, but we deny Cobun's request for attorney fees.

FACTS

Chow and Cobun lived together for about four years and had a son together. When the couple separated, both parties petitioned the superior court for a parenting plan, residential schedule, and child support. The matter proceeded to trial to resolve disputes about the appropriate residential schedule and child support.

At the time of trial, Chow owned her own dental practice, specializing in endodontics, and she earned about $8,000 per month. Chow had also recently secured a $1.2 million dollar loan to fund her new private practice. Chow worked Monday through Thursday.

Cobun worked as a full time firefighter and made $7,414.96 per month. Cobun had a nontraditional work schedule, which consisted of a 9 day cycle where each fire crew worked one 24 hour shift, followed by 24 hours off duty, worked another 24 hour shift, followed by 24 hours off duty, and then worked a final 24 hour shift (totaling 5 days), followed by 4 consecutive days off duty. This schedule rotated consistently throughout the year. Because of his schedule, Cobun sought visitation primarily on his consecutive days off duty, which varied from week to week.

Cobun also asked for deviation from the standard child support schedule based on his proposed parenting plan and residential schedule. He testified that based on the number of days his son would live with him, the expenses he would undertake for their son's care would increase. For example, Cobun would be transporting his son more and would have increased expenses for food. He also believed that Chow's expenses would reflect a corresponding reduction. Based on his awareness of Chow's historical income, and based on her projected income at her new dental practice, Cobun also believed a deviation would not leave Chow with

insufficient funds. He sought a deviation from the standard child support calculation in the amount of $244.69.

Chow asked the court not to deviate from the standard calculation. She testified that she did not believe that Cobun had undertaken any expenses in caring for their son that would reduce her basic expenses.

The superior court considered the Child Support Schedule Worksheet. It also considered a "Residential Schedule Credit Using Formula," generated by the court's Support*Calc* 2017 software. Clerk's Papers (CP) at 209; *see also* Verbatim Report of Proceedings (VRP) (Nov. 17, 2017) at 5-9 (discussing the court's use of Support*Calc*). The computer program calculated a recommended deviation from the standard child support calculation in the amount of $214.24.

The superior court issued a memorandum opinion that established a parenting plan, residential schedule, and child support. It designated Chow as the primary custodian. It granted Cobun residential time during periods when he had four off-duty days in a row. The court found that Chow's gross income was $8,000 per month and Cobun's was $7,577 per month. It found Chow's portion of the basic child support obligation to be 58 percent and Cobun's 42 percent. And it noted that the standard child support calculation resulted in a transfer payment from Cobun to Chow in the amount of $500 per month. Regarding Cobun's request for a downward deviation, the court found:

> Based on RCW 26.09.035, the Court will allow a slight deviation of Father's child support obligation, based on the following:
>
> - Parents' relatively equal income;
> - The number of days the child spends with the Father ($\approx$ 1/3 of each month) which the Court determines to be significant;
> - The circumstances of each hous[e]hold: 1 parent/1 child (when child is with that parent); and

> - The fact that neither parent has insufficient income to support [themselves] while contributing to support of the child.
>
> The Court is allowing a residential credit to the Father of $141.96. The net monthly transfer payment, by Father to Mother, is $500.00, which shall be retroactive to September 1, 2017, and is due on the first day of each month thereafter. Worksheets are enclosed for attachment to the Final Child Support Order.

CP at 202. The amount of downward deviation was less than the deviation amount that SupportCalc had recommended.

The superior court entered orders consistent with its memorandum opinion, which recited the same findings and reasons for deviation.

Cobun moved for reconsideration and asked the court for clarification of his support obligation specifically related to daycare expenses. At the hearing on reconsideration, the court determined that it had made a mistake in calculating Cobun's initial child support in light of daycare expenses. The court discussed the fact that in making its original ruling, it used the SupportCalc software to calculate a recommended deviation from the standard calculation. Then the court determined, in its discretion, whether or not to grant a deviation, and, if so, how much, based on the facts of the case.

The superior court granted Cobun's motion to correct its error in accounting for daycare expenses, explaining that Cobun had to pay his proportionate share of daycare expenses. It then recalculated Cobun's child support obligation and recalculated the recommended deviation using SupportCalc. The court exercised its discretion, providing Cobun a $100 downward deviation, which was again less than the deviation SupportCalc recommended. And it entered an amended final child support order, reciting the same reasons for the downward deviation provided in the memorandum opinion and prior child support order.

Chow appeals the superior court's amended child support order granting Cobun a $100 per month deviation from the standard child support calculation.

ANALYSIS

DEVIATION FROM THE STANDARD CHILD SUPPORT SCHEDULE

Chow argues the superior court abused its discretion in granting a $100 deviation from the standard child support calculation. We disagree.

A.      Standard of Review

The legislature adopted the uniform child support schedule as a means to equitably apportion the child support obligation between parents, insure child support is adequate to meet a child's basic needs, and provide additional child support commensurate with the parents' income, resources, and standard of living. RCW 26.19.001. A child support order must be supported by written findings of fact and must be accompanied by a completed child support worksheet. RCW 26.19.035(2), (4).

Washington courts give considerable deference to a superior court's decision setting child support, reversing only where the court has manifestly abused its discretion. *In re Marriage of Booth*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990); *see also Choate v. Choate*, 143 Wn. App. 235, 241, 177 P.3d 175 (2008). A superior court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Horner*, 151 Wn.2d 884, 893, 93 P.3d 124 (2004). A decision is manifestly unreasonable if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable

reasons if the court applied the incorrect legal standard or the facts do not meet the requirements of the correct standard. *Id.* at 893-94.

B.      Basis for a Downward Deviation from the Standard Child Support Calculation

Chow does not dispute how the superior court arrived at the standard calculation for child support. She contests only the court's decision to deviate from the standard calculation. Chow first argues that the court abused its discretion because neither the facts nor the findings support a conclusion that it would be inequitable to apply the standard calculation without deviation. We disagree that this is the appropriate legal standard.

Under RCW 26.19.075(1)(d), the superior court has discretion to deviate from the standard calculation based on a variety of factors, including the children's residential schedule and the effect the child support obligation has on the parents' income and expenses. *In re Marriage of Schnurman*, 178 Wn. App. 634, 638, 316 P.3d 514 (2013). Under the plain language of the statute, if the child spends a significant amount of time with the parent who is obligated to make a support payment, the superior court may deviate from the standard calculation. RCW 26.19.075(1)(d). However, the superior court may not deviate if doing so will result in insufficient funds to meet the basic needs of the child in the household receiving the support. *Id.*

The superior court must also "consider evidence concerning the increased [and decreased] expenses" of the parties resulting from "the significant amount of time the child spends with the parent making the support transfer payment." *Id.* The superior court must enter written findings of fact supporting the reasons for any deviation or denial of a party's request for deviation. RCW 26.19.075(3); *Schnurman*, 178 Wn. App. at 640. Nothing in the plain language

of the statute requires a specific finding that it would be inequitable to impose child support based only on the standard calculation, nor does the statute suggest that such a finding is a prerequisite to ordering a deviation.

Chow relies on statements in *In re Marriage of Pollard* and *In re Marriage of Oakes* for the proposition that child support deviations should be granted only if it would be inequitable not to deviate. *In re Marriage of Pollard*, 99 Wn. App. 48, 55, 991 P.2d 1201 (2000) ("Deviation from the standard support obligation is appropriate when it would be inequitable not to do so."); *In re Marriage of Oakes*, 71 Wn. App. 646, 652 n.4, 861 P.2d 1065 (1993) ("[Deviations] remain the exception to the rule and should be used only when it would be inequitable to do otherwise."). But in *Pollard*, the court was emphasizing the superior court's discretion to deviate when the court believed it would be inequitable not to do so based on the totality of circumstances of both households. 99 Wn. App. at 54-55. In context, the cited language in *Pollard* is not a limitation on the superior court's broad discretion. *Id*.

Similarly, the *Oakes* court explained that it was proper for the superior court to consider a deviation based not on a recited statutory factor, but instead on a conclusion that the legislature had not contemplated the factual circumstances that arose in that case. 71 Wn. App. at 650-52. Thus, *Oakes* recognized the superior court's broad discretion to deviate from the standard child support calculation when the facts support it, even if doing so required consideration of circumstances outside of the statutory factors.

Contrary to Chow's argument, neither of these cases dictates that the court must conclude it would be inequitable to decline to impose a deviation. The superior court did not err when it

7

followed the statutory analysis without an added finding that applying the standard calculation without deviation would be inequitable.

C.     Use of Computer Software to Calculate Recommended Deviation

Chow argues the superior court abused its discretion because it relied on what she characterizes as an unapproved worksheet to determine whether to grant a downward deviation. We disagree.

RCW 26.19.035(3) provides:

Worksheets in the form developed by the administrative office of the courts shall be completed under penalty of perjury and filed in every proceeding in which child support is determined.  The court *shall not accept* incomplete worksheets or *worksheets that vary from the worksheets developed by the administrative office of the courts*.

(Emphasis added.)

Nevertheless, our Supreme Court has recognized, in a case specifically addressing residential deviation, that

"[b]ecause the [current] statute explicitly gives the trial court discretion to deviate from the basic child support obligation based on the facts of a particular case, *a specific formula is neither necessary nor statutorily required to ensure the parents' child support obligation is properly allocated.*"

*Schnurman*, 178 Wn. App at 642 (quoting *State ex. rel. M.M.G. v. Graham*, 159 Wn.2d 623, 636, 152 P.3d 1005 (2007)).[1]

---

[1] We note that the administrative office of the courts has an appendix worksheet for a "residential split adjustment" to be used *as part of the standard calculation* only where at least one of the children from this relationship is living with one parent most of the time.  *See* http://www.courts.wa.gov/forms/documents/WSCSS-Attachment%20for%20RSA.pdf.  But this worksheet does not indicate that it was intended to address *deviations* from the standard calculations to account for residential time.  *See id.*

Chow relies on *Choate*, 143 Wn. App. at 241-44, to argue that the court erred in relying on Support*Calc*'s residential credit. In *Choate*, the child support order stated only that the reason for deviation was "Whole Family Formula applied," and the superior court attached a document entitled "Whole Family Formula Deviation," without entering other findings of fact applying the statutory considerations to support its deviation. *Id.* at 242-43. The *Choate* court noted that the appendix to chapter 26.19 RCW does not list a worksheet entitled "Whole Family Formula Deviation." *Id*. at 242. It held that the superior court's reliance on that document—without written findings of fact outlining the court's specific reasons for deviation—constituted error. *Id*. The court emphasized the lack of adequate independent findings and did not hold that consideration of a worksheet, computer-generated calculation, or formula, by itself, would have been error.

We do not read RCW 26.19.035(3) to require reversal where the superior court has considered a worksheet, formula, or Support*Calc*-generated calculation when determining whether it should deviate from the standard calculation. Indeed, such a holding could have sweeping impact because superior courts and family law practitioners commonly use Support*Calc*. Instead, we read the two sentences in RCW 26.19.035(3) together to mean that the administrative office of the courts has established certain required child support worksheets that must be submitted in every case, and those required worksheets must not deviate from the versions that the administrative office has approved.

But that does not mean that a superior court cannot use other formulas or calculations to inform a deviation decision, so long as the court considers the factors that the deviation statute requires and enters findings adequately supporting its ultimate determination. This reasoning is

consistent with *Choate*, which reversed for a failure to enter adequate findings, and with the significant deference that we give to superior courts in making child support determinations, especially deviation determinations. *See Goodell v. Goodell*, 130 Wn. App. 381, 391, 122 P.3d 929 (2005).

In this case, the superior court accepted the Child Support Schedule Worksheet developed by the administrative office of the courts when it determined the parties' basic child support obligation. When addressing the request for deviation, the court advised the parties that it did not do calculations by hand, but instead, used Support*Calc* to do the math. The attachment of the Support*Calc* document merely provided a record of one item the court considered when it applied the statutory factors. Notably, the court did not blindly adopt the Support*Calc*'s deviation calculation, but instead, adopted a different deviation based on its own application of all of the relevant factors.

We hold that the use of computer software as a tool to inform a superior court's decision on deviation does not, by itself, constitute an abuse of discretion, so long as the court enters adequate written findings supporting its deviation decision. Therefore, the superior court did not abuse its discretion when it used Support*Calc* because here, as discussed below, substantial evidence supports its findings.

D.      Substantial Evidence Supports the Superior Court's Findings, Which in Turn, Support a
        Deviation

Chow argues the superior court abused its discretion because substantial evidence does not support its findings of fact, and the findings of fact do not support a downward deviation. We disagree.

RCW 26.19.035(2) provides, "An order for child support shall be supported by written findings of fact upon which the support determination is based and shall include reasons for any deviation from the standard calculation." The superior court must enter written findings of fact in all cases. *Id.*; *see also* RCW 26.19.075(3) ("The court shall enter findings that specify reasons for any deviation or any denial of a party's request for any deviation from the standard calculation made by the court.").

We review findings of fact for substantial evidence. *Wilson v. Wilson*, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). Substantial evidence exists when there is sufficient evidence to persuade a fair-minded, rational person of the finding's truth. *Id.* We do not substitute our judgment for the superior court's judgment, weigh the evidence, or evaluate witness credibility. *Id.* When the superior court has weighed the evidence, we determine only whether substantial evidence supports the findings of fact, and if so, whether the findings support the superior court's conclusions of law. *Id.* We review the superior court's conclusions of law de novo. *In re Marriage of Wehr*, 165 Wn. App. 610, 613, 267 P.3d 1045 (2011).

The record shows that the superior court supported its child support order with written findings of fact and included the reasons for its deviation from the standard calculation. It found that under the parenting plan, the child would spend a significant amount of time with Cobun. The record shows the court considered testimony concerning the increased and decreased expenses of both parties resulting from the residential schedule. It also heard testimony regarding the specific expenses that Cobun expected to increase, specifically those related to transportation and food. Finally, the record reflects that the deviation would not leave Chow

11

with insufficient funds. This is all that RCW 26.19.035(2) and RCW 26.19.075(1)(d), (3) required.

Chow testified that she did not believe that Cobun had any child care expenses that would, in effect, reduce her basic child support obligation. But the mere existence of conflicting testimony does not undermine the superior court's decision. We do not substitute our judgment for the superior court's judgment, reweigh conflicting evidence, or evaluate witness credibility. *Wilson*, 165 Wn. App. at 340.

Chow argues that the court here "did not list any facts [that] indicate how much the father spends on the child when she is in his care [that] would justify the reduction in support." Reply Br. of Appellant at 7. However, RCW 26.19.035(2) and RCW 26.19.075(3) require the superior court to "include" and "specify [its] reasons" for any deviation from the standard calculation in its written findings. RCW 26.19.075(1)(d) requires the superior court to "*consider* evidence concerning the increased [and decreased] expenses" of the parties that may result from granting a deviation. (Emphasis added.) The superior court specified its reasons for granting a deviation in the child support order, and it considered testimony from both parties concerning increased and decreased expenses.

Chow also relies on *State on Behalf of Sigler v. Sigler*, 85 Wn. App. 329, 338, 932 P.2d 710 (1997), to contend that the superior court's findings were insufficient to support deviation. In *Sigler*, it appears the superior court relied only on the fact that the child resided with the father a significant amount of time. *See id.* Here, the superior court also relied on the parents' similar incomes and the circumstances of each household, which included testimony about the specific expenses Cobun anticipated would increase.

The record reflects how the superior court calculated the amount of deviation in this case. The court considered testimony of the parties, including specific evidence that established the number of days per year the child would reside with Cobun and testimony that Cobun's expenses for food and transportation would increase as a result. The court then used the Support*Calc* program to calculate a recommended deviation based on various inputs, it determined Support*Calc*'s recommendation was too high based on the evidence, and the court ultimately granted Cobun a lesser deviation.

Again, we do not substitute our judgment for the superior court's, weigh the evidence, or evaluate witness credibility. *Wilson*, 165 Wn. App. at 340. The record substantially supports the superior court's grant of a $100 per month deviation. The superior court did not abuse its discretion.

E.      Attorney Fees on Appeal

Cobun requests attorney fees on appeal. However, after review of his affidavit of need, we deny Cobun's request for attorney fees.

CONCLUSION

We affirm the superior court's child support order. We deny Cobun's request for attorney fees.

A majority of the panel having determined that this opinion will not be printed in the

No. 50986-5-II

Washington Appellate Reports, but will be filed for public record in accordance with RCW

2.06.040, it is so ordered.

Glasgow, J.

We concur:

Worswick, J.

Maxa, C.J.