# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re the Marriage of:<br><br>KATIE MICHELLE CARRICO fka WICKSTROM,<br><br>Appellant,<br><br>v.<br><br>VANCE KALYNN WICKSTROM.<br><br>Respondent. | No. 52037-1-II<br><br><br><br><br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — The trial court granted Vance Kalynn Wickstrom's petition to modify child support in light of a parenting plan imposing equal residential time for himself and Katie Michelle Carrico, his ex-wife.[1] Carrico appeals, arguing that the trial court abused its discretion by granting the petition because Wickstrom did not show an uncontemplated substantial change in circumstances, that substantial evidence did not support the trial court's decision, and that adequate written findings of fact did not support a child support deviation. We affirm.

## FACTS

Carrico and Wickstrom married in 2007 and separated in April 2016. They had three children, aged seven, five, and three, when the dissolution became final in July 2017.

---

[1] Since the dissolution, Katie Michelle Wickstrom has used the name "Katie Carrico." Report of Proceedings (RP) (Jan. 24, 2018) at 3.

After the separation, Carrico and the three children moved to Shoreline from where the family had lived in Kitsap County. Wickstrom continued to reside in Kitsap County and hoped to move to the Seattle area sometime in the coming years.

In February 2017, the parties entered a settlement agreement requiring Wickstrom to pay Carrico $1,376 in child support and $324 in maintenance on a monthly basis for three years. The settlement also resolved various other financial issues and obligations of the parties. The settlement did not resolve the parenting plan and the parties agreed to continue to trial on that issue.

At the time of the settlement, the Guardian Ad Litem (GAL) issued a report recommending joint decision-making. She also recommended equal residential time if the parties came to reside near one another.

In August 2017, a housing assistance program in Seattle accepted Wickstrom. The program allowed him to move to the Seattle area earlier than he had anticipated. Wickstrom described the rapidity of his move as "a surprise to everyone." Clerk's Papers (CP) at 38. The case went to trial on the parenting plan several days after Wickstrom's move and Carrico consented to a shared parenting plan with equal residential time.

The court entered a final parenting plan in September 2017. It ordered that both parents have joint decision-making and equal residential time with the children. At trial, the court "expressed concern about the amount of child support being paid by [Wickstrom], as it was not based on a shared parenting plan." CP at 109. Carrico responded that "'the parties knew, when the[y] entered into an agreement, that it could become a fifty-fifty parenting plan, and they made no agreement or provision as to what happens if it does or that the residential provision would be

2

addressed.'" CP at 109. She claimed "'it was agreed by the parties it wouldn't change.'" CP at 109.

In November 2017, Wickstrom filed a petition to modify the child support order. He contended that the changes to the parenting plan constituted a substantial change in circumstances[2] that had occurred since the court signed the order. In support of his petition, Wickstrom filed a declaration explaining the facts justifying his request and a financial declaration listing his monthly income and expenses.

Wickstrom's financial declaration listed $1,150 per month for children's expenses and relied on Carrico's financial information from the underlying dissolution case. Wickstrom declared his own net monthly income as approximately $300 lower than at the time of the dissolution. Wickstrom did not provide any bank statements or other documentation of his finances.

Carrico did not submit any financial information to the court. She submitted a declaration contradicting several specific statements in one of Wickstrom's declarations, but did not contradict any of his financial information.

The trial court held a hearing on Wickstrom's petition. Carrico argued that Wickstrom's move to Seattle was a "foreseeable circumstance" and thus not a "substantial change in circumstances" justifying modification of child support. Report of Proceedings (RP) (Jan. 24, 2018) at 27. The court gave the parties an additional week to provide briefing on whether "substantially changed circumstances" under RCW 26.09.170 included changes that were foreseeable by the parties.

---

[2] RCW 26.09.170(5)(a) allows a party to petition for modification of child support "based upon a showing of substantially changed circumstances at any time." The legislature recently amended this statute. LAWS OF 2019, ch. 275 § 2. The changes do not affect our analysis.

After receiving the additional briefing, the court ruled that, while a change of circumstances must be an event not "contemplated," at the time of the original child support order, the case on which Carrico relied did not use the word "unforeseen." CP at 110. It stated that the "only clear evidence" was that, "while [Wickstrom] may have had *eventual* plans to relocate, those plans were for some unknown future date, years (not mere months) down the road." CP at 111. Carrico claimed the parties had agreed, as part of the February settlement, to leave child support unchanged regardless of the outcome of the parenting plan, but the court found "no evidence of any such agreement." CP at 111. The court also found that Wickstrom "had no plans to relocate at any point in the near future" until "just before the trial of August 31, 2017" and his relocation to Seattle was not "truly 'contemplated'" prior to that. CP at 111.

The court granted Wickstrom a residential credit because of the parenting plan that gave him equal residential time with the children.[3] It also observed that Wickstrom "testified that his financial situation had changed for the worse since moving to the Seattle area," but that he had "not alter[ed] his financial figures to reflect the same, thus benefitting [Carrico]." CP at 111.

The court found that the children "[s]pend significant time with the parent who owes support" and that a "non-standard" child support amount would be enough for the other household to provide for the children's basic needs. CP at 141. The court also found that "there was no testimony or evidence to counter the financial figures provided by [Wickstrom]" so it "accept[ed] Wickstrom's] figures as established fact." CP at 111. The court relied on declarations and briefing from both parties and imputed the same income to both parents from the final child support order after trial.

---

[3] *See* RCW 26.19.075(1)(d).

The court reduced Wickstrom's monthly child support obligations from $1,376 to $357. It attached to its order a worksheet explaining how it applied a residential credit formula. The court assigned the parties a proportional share of obligation for the children associated with their individual net incomes, then applied a residential credit to Wickstrom equal to 50 percent of the estimated costs of caring for the children, since he cared for them 50 percent of the time. This adjustment resulted in a credit of $1,015.50, or the difference between his standard child support obligation and the modified number with the deviation applied.

In the court's final order, it noted that, before Wickstrom had moved and before trial, the GAL report had stated that "a shared residential schedule would be in the children's best interests" and that Wickstrom had intended to follow Carrico to Seattle following the separation, but did not believe he would be able to do so for another year. CP at 108.

Carrico appeals.

## ANALYSIS

Carrico contends that the trial court erred by granting Wickstrom's petition to modify his child support obligations.[4] She contends no uncontemplated change of circumstances occurred under RCW 26.09.170; the trial court's written findings did not support a "residential credit" deviation; and substantial evidence did not support the trial court's decision.

I.  LEGAL PRINCIPLES

"The legislature's stated intent in enacting the child support schedule statute, chapter 26.19 RCW, was 'to insure that child support orders are adequate to meet a child's basic needs and to provide additional child support commensurate with the parents' income, resources, and standard

---

[4] Carrico argues that the trial court abused its discretion in several ways. To the extent she challenges the trial court's factual findings, we review for substantial evidence. *See Blackburn v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016).

of living." *In re Marriage of McCausland*, 159 Wn.2d 607, 611, 152 P.3d 1013 (2007) (quoting RCW 26.19.001)). The trial court determines a party's basic child support obligation "from an economic table in the child support schedule" that is "based on the parents' combined monthly net income and the number and age of the children." *McCausland*, 159 Wn.2d at 611.

"A party to an order of child support may petition for a modification based upon a showing of substantially changed circumstances at any time." RCW 26.09.170(5)(a). "A petition is 'significant in nature and anticipates making substantial changes and/or additions to the original order of support.'" *In re Marriage of Morris*, 176 Wn. App. 893, 901, 309 P.3d 767 (2013) (quoting *In re Marriage of Scanlon*, 109 Wn. App. 167, 173, 34 P.3d 877 (2001)). The party moving to modify child support "bears the burden of showing a substantial change in circumstances." *McCausland*, 159 Wn.2d at 615-16.

Changes in circumstances justifying a modification of child support "must have been uncontemplated at the time the [dissolution] decree was entered." *In re Marriage of Arvey*, 77 Wn. App. 817, 820, 894 P.2d 1346 (1995). "Washington courts have consistently held" that a substantial change of circumstances justifying modification "is one that was not contemplated at the time the original order of support was entered."[5] *Scanlon*, 109 Wn. App. at 173.

We review an order on a petition for modification of child support for an abuse of discretion. *Scanlon*, 109 Wn. App. at 174. A trial court abuses its discretion if its decision is manifestly unreasonable, or is based on untenable grounds or an erroneous view of the law. *Scanlon*, 109 Wn. App. at 174-75. We review findings of fact for substantial evidence. *Blackburn*

---

[5] Wickstrom contends that the legislature eliminated the requirement that a substantial change in circumstances be uncontemplated when it amended RCW 26.09.170 in 2010. Because the change in circumstances was uncontemplated in this case, we do not address whether the amendments had any effect on this requirement.

*v. Dep't of Soc. & Health Servs.*, 186 Wn.2d 250, 256, 375 P.3d 1076 (2016). "'Substantial evidence' means evidence that is sufficient 'to persuade a rational, fair-minded person of the truth of the finding.'" *Blackburn*, 186 Wn.2d at 256 (quoting *Hegwine v. Longview Fibre Co.*, 162 Wn.2d 340, 353, 172 P.3d 688 (2007)).

## II.  SUBSTANTIAL CHANGE OF CIRCUMSTANCES

Carrico contends that the trial court erred by finding a substantial change of circumstances justifying a modification in child support because the alleged change was contemplated by the parties at the time of the original child support settlement. She argues that all parties understood at the time of the settlement that, if Wickstrom moved closer to Carrico and the children, that the court would likely order equal parenting time. In the alternative, she argues that the parties at least contemplated *some* parenting plan at the time of the settlement, such that the parenting plan cannot amount to an uncontemplated change in circumstances. Substantial evidence supports the trial court's findings on this issue.

"[A] modification of support requires a showing of changed circumstances supported by the entry of specific findings and conclusions. An absence of findings and conclusions in the record on appeal requires reversal and remand." *In re Marriage of Stern*, 68 Wn. App. 922, 926-27, 846 P.2d 1387 (1993); *see also Scanlon*, 109 Wn. App. at 174 (reversing a child support modification order due to absence of findings in the record of changed circumstances); CR 52(a)(2)(B).

The trial court in this case found that, at the time of the settlement agreement, Wickstrom "may have had *eventual* plans to relocate, [but] those plans were for some unknown future date, years (not mere months) down the road." CP at 111. It also found that Carrico had "provided no evidence" of any agreement to "leave child support unchanged regardless of whether the parenting

plan trial resulted in split custody." CP at 111. These findings are supported by the February settlement and the GAL report, neither of which anticipated the rapidity of Wickstrom's move, as well as by statements in Wickstrom's declaration that he "did not anticipate being able to relocate for a long time" and "expected to have to accept only weekends with the kids for several years" until his sudden ability to relocate "was a surprise to everyone" in August 2017. CP at 37-38. Substantial evidence supports the trial court's finding that an uncontemplated substantial change in circumstances existed.

III.     CHILD SUPPORT MODIFICATION

Carrico contends that the trial court erred by ordering a child support deviation with insufficient written factual findings, and that substantial evidence does not support the trial court's decision. We disagree.

A.     DEVIATION

Carrico contends that the trial court erred by granting a deviation absent written findings of fact supported by substantial evidence. She contends *In re Marriage of Choate*, 143 Wn. App. 235, 177 P.3d 175 (2008), where the trial court abused its discretion by applying a deviation based only on findings that father had had an additional child, controls this case.

Trial courts may deviate from the standard child support calculation if:

> [T]he child spends a significant amount of time with the parent who is obligated to make a support transfer payment. The court may not deviate on that basis if the deviation will result in insufficient funds in the household receiving the support to meet the basic needs of the child or if the child is receiving temporary assistance for needy families. When determining the amount of the deviation, the court shall consider evidence concerning the increased expenses to a parent making support transfer payments resulting from the significant amount of time spent with that parent and shall consider the decreased expenses, if any, to the party receiving the support resulting from the significant amount of time the child spends with the parent making the support transfer payment.

8

RCW 26.19.075(1)(d). The intent of this statute is to "afford wider discretion to the trial court when considering a deviation for residential credit" than had existed under previously existing guidelines. *In re Parentage of A.L.*, 185 Wn. App. 225, 238, 340 P.3d 260 (2014). Trial courts must "enter findings that specify reasons for any deviation or any denial of a party's request for any deviation from the standard calculation made by the court." RCW 26.19.075(3).

In *State ex rel. M.M.G. v. Graham*, the children spent equal time with both parents and the father made more than twice as much money as the mother. 159 Wn.2d 623, 628, 152 P.3d 1005 (2007). The trial court deviated from the standard child support calculation because the children spent significant time with the father and the deviation did not leave the mother with insufficient funds to meet the children's needs. *M.M.G.*, 159 Wn.2d at 628. The court concluded that RCW 26.19.075 "gives the trial court discretion to deviate from the basic child support obligation based on a variety of factors, one of which is the amount of residential time the children spend with the parents."[6] *M.M.G.*, 159 Wn.2d at 636. "Because the statute explicitly gives the trial court discretion to deviate from the basic child support obligation based on the facts of a particular case, a specific formula is neither necessary nor statutorily required to ensure the parents' child support obligation is properly allocated." *M.M.G.*, 159 Wn.2d at 636.

In *Choate*, the father petitioned to modify his child support obligations based on a new child he had with a new partner. 143 Wn. App. at 238. The trial court granted a deviation based on the "Whole Family Formula" because of his new child and attached an unofficial worksheet to its order explaining how it had calculated the deviation. *Choate*, 143 Wn. App. at 239-40. "Other

---

[6] The court distinguished situations where the parents each have primary residential time with one child ("split" time ) from those where the parents share equal residential time with all children ("shared" time ) and declined to apply a formula from a previous case analyzing split custody. *M.M.G.*, 159 Wn.2d at 635-36 (citing *Arvey*, 77 Wn. App at 819)).

than referring to [the new child], the trial court did not make findings of fact supporting the downward deviation or the method used to derive the final child support transfer payment." *Choate*, 143 Wn. App. at 240.

*Choate* noted that "'[o]nly the income of the parents of the children whose support is at issue shall be calculated for purposes of calculating the basic support obligation,'" and that "'order[s] for child support . . . shall include reasons for any deviation from the standard calculation.'" 143 Wn. App. at 241 (quoting RCW 26.19.071(1), .035(2)). The "Whole Family Formula" credit the trial court used in *Choate* required that the court consider "'the total circumstances of both households'" because the father had a child from another relationship. *Choate*, 143 Wn. App. at 241-42 (quoting RCW 26.19.075(1)(e) (emphasis omitted)). That statute "unequivocally require[d] written findings of fact to support any deviation and a consideration of the total circumstances of both households." *Choate*, 143 Wn. App. at 242.

In this case, the court applied a residential credit under RCW 26.19.075(1)(d), rather than the "children from other relationship" deviation under RCW 26.19.075(1)(e). The residential credit the trial court used does not include the express language on which *Choate* based its decision, regarding "consideration of the total circumstances of both households." 143 Wn. App. at 242; RCW 26.19.075(1)(d), (e). The residential credit deviation requires the court to consider Wickstrom's increased expenses as a result of the significant amount of time spent with him and the decreased expenses, if any, to Carrico. RCW 26.19.075(1)(d). The trial court must still "enter findings that specify reasons for any deviation . . . from the standard calculation." RCW 26.19.075(3).

The trial court found that the children in this case "[s]pend significant time with the parent who owes support," that "[t]he non-standard amount still gives [Carrico's] household enough

money for the children's basic needs," and that the children "do not get public assistance." CP at 141. These are the only findings required for the trial court to order a deviation under RCW 26.19.075(1)(d). To the extent Carrico alleges these findings are not supported by substantial evidence, we disagree and address her argument below.

### B. SUBSTANTIAL EVIDENCE

Carrico contends that the trial court erred by modifying the child support order because substantial evidence did not support its decision. She argues that Wickstrom presented only declarations "devoid of any documentary evidence" to the trial court. Br. of Appellant at 9. She claims these declarations do not amount to substantial evidence, such that the trial court erred by relying on them in its decision. We agree.

"In a child support modification proceeding, the trial court must set forth written findings of fact supported by substantial evidence." *In re Parentage of Fairbanks*, 142 Wn. App. 950, 956, 176 P.3d 611 (2008). In this case, to grant Wickstrom's requested deviation, the trial court had to "enter findings that specif[ied] reasons for any deviation or any denial of a party's request for any deviation from the standard calculation made by the court." RCW 26.19.075(3). These findings must have been supported by substantial evidence.

"RCW 26.19.075 gives the trial court discretion to deviate from the basic child support obligation based on a variety of factors, one of which is the amount of residential time the children spend with the parents." *M.M.G.*, 159 Wn.2d at 636. "Because the statute explicitly gives the trial court discretion to deviate from the basic child support obligation based on the facts of a particular case, a specific formula is neither necessary nor statutorily required to ensure the parents' child support obligation is properly allocated." *M.M.G.*, 159 Wn.2d at 636.

11

The trial court in this case found that "there was no testimony or evidence to counter the financial figures provided by [Wickstrom]," so it "accept[ed Wickstrom's] figures as established fact." CP at 111. The court considered:

1. (Respondent's) Petition to Modify Child Support;
2. Declaration of Vance Wickstrom;
3. Financial Declaration of Vance Wickstrom;
4. Memorandum of Petitioner in Opposition to Petition to Modify Support Order;
5. Declaration of Katie Carrico in Opposition to Petition to Modify;
6. Reply Declaration of Vance Wickstrom;
7. Memorandum of Petitioner re: Case Law Which Requires That a Substantial Change in Circumstances be Uncontemplated;
8. Respondent's Memorandum of Law re: RCW 26.09.170;
9. The pleadings and filings in this matter; and
10. The oral arguments of the parties.

CP at 107-08.

The trial court relied on the final parenting plan and Wickstrom's declaration for the facts that Wickstrom had moved to the Seattle area, increasing his expenses, and had acquired equal residential time to Carrico. Carrico repeatedly attacks the trial court's reliance on Wickstrom's declarations and alleges the court abused its discretion by failing to require documentary evidence demonstrating the changes to his financial situation. The trial court does not abuse its discretion where it relies on sworn declarations to determine finance details. *See Bearden v. McGill*, 193 Wn. App. 235, 251-52, 372 P.3d 138 (2016).

The trial court applied the residential credit by assessing the total cost of care for the children and assigning each party a percentage of that cost based on their relative net monthly income. It then assigned Wickstrom, who was responsible for 67.6 percent of the children's support, a residential credit equal to 50 percent of the cost of caring for the children, or $1,015.50, and subtracted that from his monthly child support obligations. The trial court applied a reasonable

method to account for Wickstrom's 50 percent residential time and still require support to Carrico based on Wickstrom's higher net income.

Substantial evidence supported the trial court's findings and the trial court did not err by granting Wickstrom's petition to modify child support.

## ATTORNEY FEES

Carrico contends that we should award her attorney fees based on disparity of income between the parties pursuant to RCW 26.09.140. Wickstrom responds that we should award him fees "for having to respond to this appeal, when the trial court's decision was not a manifest abuse of discretion." Br. of Resp't at 20. We decline to award fees to either party.

RCW 26.09.140 provides us with authority to, "in [our] discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorneys' fees in addition to statutory costs." We may "award costs and attorney fees on appeal after considering the financial resources of both parties under RCW 26.09.140. In considering the financial resources of both parties, [we] balance[] the needs of the requesting party against the other party's ability to pay." *In re Marriage of Kaplan*, 4 Wn. App. 2d 466, 488, 421 P.3d 1046 (2018) (internal citation omitted). We "also examine the arguable merit of the issues raised on appeal." *In re Marriage of Leslie*, 90 Wn. App. 796, 807, 954 P.2d 330 (1998).

As to Carrico's request for fees, she has not prevailed on any issues on appeal and acknowledges that her attorney is representing her pro bono on appeal. Despite the parties' disparity in income, we reject her request for fees.

As to Wickstrom's request for fees, RAP 18.1(b) requires a party to devote a section of its opening brief to the request for fees and include supporting argument. Wickstrom has not done so. We decline to award him fees.

13

CONCLUSION

We conclude that substantial evidence supports the trial court's findings and it did not abuse its discretion by modifying Wickstrom's child support obligations. We affirm its decision.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, C.J.

Sutton, J.